# Cases

# SECOND DEPARTMENT

AT

# GENERAL TERM,

## September, 1890.

---

MARY M. GOUVERNEUR AND OTHERS, APPELLANTS, *v.*
THE NATIONAL ICE COMPANY OF NEW YORK,
RESPONDENT. (TWO CASES.)

*Natural, unnavigable, fresh-water pond — title to the land under its waters — adverse
possession — the exercise of an easement does not create a prescriptive right to
the fee.*

Where land upon the side of a natural, unnavigable, fresh-water pond is conveyed
by a description, the line of which on the side of the pond runs "along said
pond," the title to the land under water, in front of the premises conveyed, does
not pass to the grantee under the deed.

*Ledyard* v. *Ten Eyck* (36 Barb., 125) disapproved.

Where no part of the land under water has been inclosed or occupied, and the only
use thereof has been in taking ice from the surface of the water by the grantee
of the adjoining property, a title by adverse possession does not arise in his favor.

Such grantee does not acquire title to the land under water, under such circum-
stances, by taking a deed thereof from a third person where there is no evidence
of the existence of any title to the land under water in such third person.

The act of taking ice from the surface of the water cannot create a prescriptive
right, as a fee in the land will not be implied from user where an easement
therein would secure the privilege enjoyed; and an easement cannot be pre-
sumed in such case, as it cannot exist separately from an estate to which it is
attached.

Appeals by the plaintiffs from two judgments, one entered, in each of the two above-entitled actions, in the office of the clerk of the county of Putnam on the 6th day of February, 1889, with notice of an intention on the part of the plaintiffs to bring up for review on such appeals an order, entered, in each case, in said office on the 6th day of February, 1889, granting to the defendant an additional allowance of five per cent on the amount claimed in the complaint.

The judgments appealed from dismissed the complaints in each of the above-entitled actions, one of which was brought to recover for a trespass, and the other of which was in ejectment, although both involved the same issue, namely, the title to the premises in question, which consisted of a pond in Putnam county, in the State of New York. The plaintiffs claimed title to the land under the water of the pond as the successors in title of the original patentee. The defendant claimed title as the owner of the land under water by virtue of certain conveyances describing the land upon the border of the pond.

*Iselin & Warner*, for the appellants.

*Close & Robertson*, for the respondent.

Dykman, J. :

The defendant claims the right to Hinckley pond, and has appropriated the same to its own use for the purpose of gathering ice from its surface for commercial purposes, and two actions have been commenced against it by the plaintiffs, one for the recovery of the premises and the other for the recovery of damages for their unlawful invasion.

The pond is a small natural lake bounded on the east and west by mountains and on the north and south by very low swamps. It is fed by two streams from the south, one of which is a little brook at the south-west corner that empties into the swamp, and loses its identity there before it reaches the pond, the other is at the southeast corner, constituting a small, well-defined stream at its mouth. The outlet is Muddy brook at the north-east corner, and that is a lazy, sluggish brook, running to the north with very little descent. The pond is shaped like the bowl of a spoon, and is sixteen feet

deep in places, while the outlet is four feet deep. It has no thread and possesses none of the characteristics of a stream. There is no current and can be none, and the finding of the trial judge on that subject is against the evidence and against the possibility. With two small streams from opposite points coming from a low swamp, and a shallow outlet on the north-east corner only four feet deep, and a pond sixteen feet deep in the center, there can be no current, and no thread. There is, of course, a general movement of the water towards the outlet, but it is imperceptible, and the pond is not the widening or spreading out of a stream, and it is not the confluence of two streams, because one of the streams from the south never reaches the pond in the shape of running water. Neither was the pond ever called Muddy brook; that notion is insinuated into the points of the respondent on this appeal, and seems to have been imbibed by the judge, but it is entirely erroneous. The conception was extracted from a deed of conveyance from Margaret Ogilvie to Abner Crosby for 200 acres of land on the east side of the pond, the boundaries of which, beginning at a hickory tree twenty chains and thirty-four links east of Muddy brook, have this for the third course, to wit: "North sixteen degrees west forty-three chains and seventy-nine links to Muddy brook," but that this language indicates the outlet, and not the pond, is shown conclusively by the words immediately following, which are "and down the same as it runs until it bears due west from the aforesaid hickory" (the place of beginning).

Moreover, in the year 1813, a deed of conveyance was made by the same family to Joshua and Samuel Mabie for land on the west side of the pond, which contained this language, in the description of the premises, after reaching the pond on the west side, "thence northerly along said pond to the outlet thereof, that is, to Muddy brook," showing that the pond and the brook were not identical.

Neither of these subjects, however, are important in the solution of the problem presented by this appeal. The paramount and controlling question is, whether the plaintiffs own the bottom of the pond, and a complete understanding of that dispute will require the statement of some facts.

Hinckley pond was included in the grant of land from King William the Third to Adolph Philips, dated June 17, 1697, and then for the first time the title was vested in an individual owner.

Let there be no mistake about the character of this body of water. It is a pond, and not a stream of water, and the rules of law applicable to streams will have no application to this case.

The trial judge has found that " the premises in question consists of the water and land under water of a natural pond or lake, sometimes called Hinckley pond and sometimes Croton lake, and are about a half a mile long and a little less than a quarter of a mile wide in the broadest part, oval in shape, and covering somewhat over forty-five acres.

He also found as follows : " The premises in question are a natural pond or basin, the confluence of two streams, Muddy brook and East inlet flowing into it at the southerly end, with an outlet, Muddy brook, at the northerly end."

The plaintiffs in this action are the successors of the patentee ; and if the title to the land in dispute has not passed from the family, the premises belong to them.

The predecessors of the plaintiffs have sold and conveyed all the land surrounding the pond to different persons by deeds which describe the premises they convey with precision, and in most cases by exact courses and distances, and, with but one exception, when the lines run along the pond they are by compass directions between monuments on the side of the pond like this.   " Beginning near the south side of a large rock on the west side of Hinckley pond ;   *   *   * thence running south sixteen degrees west five chains and sixteen links along said pond ; thence south nine degrees west four chains sixty links to a pine tree stump."   The exception to the boundaries by courses and distances is found in the deed to Joshua and Samuel Mabie, already mentioned, and in that deed the course is northerly along the pond.

It is now the insistence of the defendant that each of the deeds for the land bordering upon this water operated to convey the land to the center of the pond, and, therefore, the plaintiffs have no title to the land covered by its waters.

Pausing here for a moment, in view of such contention, it becomes appropriate to inquire whether the predecessors of the plaintiff ever lost the title to the bed of this pond.

The owners conveyed a portion of land by definite boundaries, and there is nothing in the deeds to denote an intention to buy or sell

any land not included within the boundaries expressly defined, and there is no principle of law to justify the grantee in going beyond the boundary line and taking another parcel. He cannot claim by force of his grant; and if the doctrine for which the defendant contends is to prevail, the acquisition by construction and operation of law might exceed what was obtained by express grant. It is a fundamental principle of law that one parcel of land not mentioned in a deed cannot pass as an appurtenant to another distinct parcel expressly granted by precise and definite boundaries.

If all the parcels of land conveyed around this pond by the predecessors of the plaintiffs were protracted according to the description in the deeds, all the land called for by his deed would be allotted to each grantee and the pond would remain, and thus it is demonstrated that the premises in question were not embraced in the deeds, but are excluded therefrom by the terms of the descriptions, which manifests a plain intention to grant and receive a specified quantity of land specifically described.

There is nothing in those deeds to indicate that the parties intended more than they said, and the presumption of law is that the title remains in the original proprietors until such presumption is overcome. There is no rule of the common law that half of a stream shall pass by a grant of the adjacent land. All the law does is to indulge a presumption in favor of a shore owner in the absence of evidence. The claim of the defendant is interposed by virtue of the common law, but that system of jurisprudence has been much modified in its application to our lakes, because in England it was confined to navigable rivers and the sea.

We can indulge no inference for the purpose of enlarging the grants of the plaintiffs' predecessors, for the law makes no intendment concerning such grants. The grantees take to the lines prescribed by the deeds, and their limits can be extended no further by construction. Presumption is never entertained to enlarge an estate, and a deed cannot be made to operate on property which one party did not intend to buy and the other party did not intend to sell.

We must not deceive ourselves because the land in question is covered with water. We are dealing with private rights alone, unembarrassed by any question of sovereignty. We have a natural,

unnavigable fresh-water pond, in which the State has no rights, whose bed is private property, the owner of which has made grants of land on its borders bounded by the pond, and the naked question now under consideration is, whether the grantees by force of such grants have acquired title to the bed of the pond.

The land so covered with water was owned by the ancestors of the plaintiffs, and it was the subject of private ownership like other land. That proposition lies under the shadow of a great name, for Lord HALE, in his *Treatise de Jure Maris,* said : " One man may have the river and the others the land adjacent." Being such owners, they might sell and convey the same, or they might sell and convey the land adjoining, and in neither case would the deed carry more land than it described. The water over this land does not change it in respect to its ownership. There were many lakes in the land included in the Philips Patent, but the land which they covered all passed to the patentee, and the title to all the other land unconveyed has vested in these plaintiffs, and why not this also. It has never been conveyed, and there is no principle of law which will appropriate it unconveyed. The law makes no contracts and no deeds between parties, and it can make none. It simply enforces those which are made according to their terms, and it goes no further.

Thus far our examination has proceeded upon the legal effect of the grants of land around the pond, and our conclusion upon principle is that those deeds convey only the land which they described and the title of the grantees therein extended to the water, and no further. But, if the case is to be decided upon authority, the result will be the same.

The case of *Wheeler* v. *Spinola* (54 N. Y., 378) was so nearly like this as to be an authority, for there the land was bounded by the pond, and it was held that a boundary upon a natural pond carries title to low-water mark only, and Judge EARLE, in delivering the opinion of the court, said : " Neither can the rule as to riparian ownership be applied to this pond which is applied to ordinary fresh-water streams. A boundary upon it does not carry title to its center, but only to low-water mark. Such is the rule as to boundaries upon natural ponds and lakes." Such is the doctrine of the Court of Appeals at this time, so far as any expression of that court has reached the public.

The case of *Smith* v. *Rochester* (92 N. Y., 463) depended upon many questions and considerations not involved in *Wheeler* v. *Spinola*, and this latter case was not referred to, and the inference is that the court did not intend to take any departure from the law as there laid down. The head-note in the Rochester case is unsupported and misleading.

In the Massachusetts case of *Waterman* v. *Johnson* (13 Pick., 265), Chief Justice Shaw said: "A large natural pond may have a definite low-water line, and then it would seem to be the most natural construction, and one which would be most likely to carry into effect the intent of the parties, to hold that land bounded upon such a pond would extend to low-water line, it being presumed that it is intended to give to the grantee the benefit of the water, whatever it may be, which he could not have upon any other construction."

In the case of the *Canal Commissioners* v. *The People* (5 Wend., 447), Chancellor Walworth, in his opinion said: "The principle itself (the common-law rule) does not appear to be sufficiently broad to embrace our large fresh-water lakes and inland seas, which are wholly unprovided for by the common law of England."

In the case of *Bradley* v. *Rice* (13 Me., 301) it was held that where the land in a conveyance was bounded by a pond of water, the grant extended only to the margin of the pond; and expressions of the same purport are found in *Kingman* v. *Sparrow* (12 Barb., 206;) *Champlain and St. Louis Railroad Company* v. *Valentine* (19 id., 491).

"When land is conveyed bounding upon a lake or pond, if it is a natural pond, the grant extends only to the water's edge." (Angell on Water Courses, § 41.)

"Where the boundary given is a natural pond or lake of fresh water, the boundary line will, it seems, run along the low-water mark of the pond, though other cases speak only of the water's edge." (Wash. on Real Prop. [5th ed.], vol. 3, p. 443, § 47.) The writer refers to many cases in Massachusetts, New Hampshire, Maine and Vermont, as authority for the statement in the text.

In the case of *Child* v. *Starr* (4 Hill, 382) Chancellor Walworth lays down the following rules respecting the bed of a river, and they are also applicable to a fresh-water natural pond: "The bed of a private river is a substantive matter of grant, and can only pass

as such. It can never pass as incident or appurtenant to a grant. It is land, and land cannot be incident or appurtenant to land. A conveyance of one acre of land can never be made by any legal construction to carry another acre by way of incident or appurtenance to the first. That land, and that land only, which is expressly embraced in and forms the subject-matter of a grant, passes under it." Again, he said in the same opinion : "But there is no presumption against direct proof, nor any *prima facie* intendment in the presence of an express grant ; such grant fixes its own limits and determines the rights of the parties under it."

In the case of *Ledyard* v. *Ten Eyck* (36 Barb., 125) the land of the defendant was bounded on the west and south by the lake and outlet thereof, and the judge who wrote the majority opinion said : " The deed would have the usual legal effect, and as an appurtenance would carry along the land under water to the center ; at all events, it would carry the right to the land filled in, where the water was shallow immediately in front of the defendant's premises."

That statement is antagonistic to all the authorities and expressions of writers and judges, and is manifestly erroneous. It has never been followed or referred to in any subsequent case, and in this case of *Wheeler* v. *Spinola* (*supra*) the Court of Appeals bestowed upon it the charity of its silence.

It may also be said that the theory of the defendant respecting the division of the bottom of the pond between the riparian owners is not susceptible of practical application. Under that theory the lateral limits of each owner must be lines running perpendicular to the shore and extending to the center, giving the same width at the center as on the shore, and so the owners on the sides would take the land to the center of the pond and leave nothing for the owners upon the ends, who have the same right to run to the center as the owners on the sides. The position of the defendant, therefore, falls under the condemnation of both principle and authority. This examination is sufficient to dispose of the claim of the defendant that the grants of the plaintiffs' predecessors of the land around the pond extended to the center.

The second defense introduced by the defendant is less meritorious than the first.

Assuming what is very doubtful, that the deeds upon which the claim to an adverse possession is founded are sufficiently definite and certain to form a basis for such a claim, there has been no possession or occupation under them, such as the law requires, to constitute an adverse possession.

There has been neither cultivation nor improvement and no protection by inclosure, and there has been no use for the supply of fuel or fencing timber for any purpose. Neither was there any improvement of any part of the premises so that the other portions can be deemed to have been occupied for the same length of time as the part improved, and without some or one of these the land is not deemed to have been possessed for the purpose of constituting an adverse possession. (Code of Civil Pro., § 370.)

The rule of law respecting partial occupancy applies to land used in one body according to the custom of the country, but has no application to this case. No part of this land was inclosed or occupied, and such use as was made of the shore at the south-west corner was neither permanent nor continuous.

Moreover, the procurement of deeds from persons not shown to be the owners, and an entry such as was made under them in this case, is entirely insufficient to initiate a claim to an adverse possession. (*Beach* v. *The Mayor*, 45 How. Pr., 368; *People* v. *Livingston*, 8 Barb., 255; *Sharp* v. *Brandow*, 15 Wend., 597.)

Again, the predecessors of the plaintiffs, being the owners of the land, were, at all times, constructively in the possession thereof, unless it was in the actual hostile occupation of another under a claim of title (*Bliss* v. *Johnson*, 94 N. Y., 242), and the defendant shows no occupation of the land at any time. Taking ice from the surface of the water was no occupation of the land. It was akin to a profit taken from the soil of others, and even that was repeated but once a year; but the claim of a right to take ice from the pond can only be sustained by a prescription, and such a claim cannot be sustained as a prescriptive right, because it cannot exist separately from an estate to which it is attached. (*Roe* v. *Strong*, 107 N. Y., 350; *Pearsall* v. *Post*, 20 Wend., 123; Angell on Tide Waters, 272; 2 Greenleaf's Ev., 540; Gould on Waters, § 25.)

In the case of *Wheeler* v. *Spinola* (*supra*), it was held that the cutting of salt grass annually upon an uninclosed lot for twenty

years was insufficient to constitute a possession adequate to confer title, and that was manifestly a much stronger case than this. In the case of *Miller* v. *Downing* (54 N. Y , 631) it was held that a person who maintains a wood pile upon a vacant lot for thirty years acquired no title thereby.

Another principle of law is that a fee will not be implied from user where an easement would secure the privilege enjoyed. (*Roe* v. *Strong*, 107 N. Y., 359; Gould on Waters, § 22.)

In no respect, therefore, have the acts done upon the premises in dispute responded to the requirements of the statute or been sufficient to constitute a possession which can be deemed adverse.

Neither are the plaintiffs estopped from the assertion of their legal rights, because they were never aware of the expenditure of money upon or near the premises, and neither the defendant nor its predecessors have been influenced by any conduct of the plaintiffs or those under whom they claim. Moreover, the trial judge has found that no considerable expenditure for permanent improvements were made upon the premises in question.

Our examination has proceeded far enough to show that the judgment appealed from is erroneous, although there are other important and interesting questions involved which we do not examine or decide,

The judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, J., concurred.

PRATT, J. (dissenting) :

These two actions depend upon the same question. One of them is in ejectment and the other is for trespass. The primary inquiry in each is whether or not the plaintiff owned the premises in question at the commencement of the actions.

The *locus in quo* is a pond in Putnam county, sometimes known as Hinckley pond and again as Croton lake; and there is ground in the evidence for the statement that the pond was sometimes known as Muddy brook, although the latter name has for many years been applied exclusively to the outlet.

The learned trial judge, upon conflicting evidence, has found that there is a slight current running through this so-called pond from its

inlets to its outlet.   It is a natural basin, a widening of two small streams at and below their confluence.; but the evidence, we think, justifies the inference that it is and must be classed as a water-course, and our conclusion is that it was properly treated as such.   It is non-navigable except for small row boats or skiffs.

The plaintiffs' ancestors undoubtedly owned the land about this so-called pond ; and, by various conveyances, bounded in part by the pond, have conveyed away the whole or substantially all of the adjacent upland.   They say, however, that because these various conveyances run " to the pond" or to some monument on the land at the water, and thence along the pond, sometimes by given courses and distances and sometimes without any, but generally to some other monument on the bank, and thence away from the water, and so about to a place of beginning.   The water edge is, therefore, a boundary on that side, so that the water and the land under water has never, as they claim, been conveyed and is still owned by them. The learned trial judge, in view of all the facts submitted to him, has held that these conveyances run to the center or thread of the stream of which the pond is only a part.   We conclude that this is the correct view.   It has been so clearly put in the opinion delivered at the trial term, that, notwithstanding the exceedingly ingenious, exhaustive and plausible argument of plaintiffs' counsel, it is unnecessary to do more than express our concurrence in the conclusions there expressed.   The plaintiffs are undoubtedly correct in the position that, generally speaking, fixed monuments are conclusive when referred to in grants.   But the case of a monument on the bank of a stream seems an exception to that rule unless it clearly and affirmatively appears that it was the purpose to exclude the water and land under it to the thread of the water-course.

The authorities cited, and those therein referred to, clearly show that where a grant of land is bounded by a non-navigable natural water-course, it extends to the thread of the stream, notwithstanding the fact that the courses and distances run to specified monuments on the bank.   This is because of the fact that it is impracticable, if not impossible, in specifying such a boundary, to set it up or fix a monument at the exact line *in the water*, especially at the thread of a stream.   There are one or two deeds which, at first blush, might seem to form exceptions to the application of this general rule, but

taking the grants of plaintiffs' ancestors together with all the other facts and circumstances, especially the great delay in asserting the theory upon which plaintiffs rely, and also in view of the great outlay which defendants, and others engaged in like pursuits, have made on this pond for business purposes, we think that it is now too late for plaintiffs to claim that the water and the land under water of this pond was not included in these grants.    This history shows, or, at least, strongly tends to show, acquiescence in this construction of these grants.

We do not deem it necessary to examine any of the other questions.

Judgment reversed and new trial granted, costs to abide event.