### BURTON et al. v. HOLLAND et al.* (No. 1283.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 14, 1925. Rehearing Denied Dec. 2, 1925.)

**1. Adverse possession ⊜➞16(1)—Maintaining billboards on vacant property held not to constitute adverse possession.**

Under Complete Tex. St. 1920, or Vernon's Sayles' Ann. Civ. St. 1914, arts. 5675, 5681, placing billboards on the unoccupied lands of another and there maintaining them for statutory period, without other acts of ownership, *held* not to constitute adverse possession, where owner of billboards never occupied house on land or placed tenant in same, or otherwise used premises for purposes for which they had theretofore been used.

**2. Evidence ⊜➞20(1)—Prevalence of billboards and advertising signs common knowledge.**

It is a matter of common knowledge that billboards and advertising signs are to be found on and along railroads and public highways, and at crossroads and advantageous points throughout the country in both town and rural sections.

Appeal from District Court, Jefferson County; J. D. Campbell, Judge.

Trespass to try title by Mrs. Inez B. Holland and others against W. J. Burton and others. Judgment for plaintiffs, and defendants appeal. Reversed and rendered.

Jas. A. Harrison and P. A. Dowlen, both of Beaumont, for appellants.

Crook, Lefler, Cunningham & Murphy, of Beaumont, for appellees.

O'QUINN, J. This is a suit in trespass to try title brought by appellees against appellants in the district court of Jefferson county to recover an acre of land near the city limits of the city of Beaumont. The record title to the land is in appellants. Appellees base their right to recover solely upon the five and ten years' statutes of limitation. The case was tried before the court without a jury and judgment rendered for plaintiffs, the court finding that appellees were entitled to recover solely by virtue of the ten years' statute of limitation. Motion for a new trial was overruled, and the case is before us for review on appeal.

Appellants present several different matters as error, but as we have concluded that the judgment should be reversed and judg-

---

BURTON v. HOLLAND

ment here rendered for appellant, because, as we believe, the evidence does not show that character of adverse possession required by the statute to support limitation, we shall not discuss or pass upon any other of the questions.

The land in question is situated within some 300 or 400 feet of the city limits of the city of Beaumont, at the intersection of the Santa Fé Railroad and the Rosedale public road, a much-traveled thoroughfare. The evidence for appellees shows that in January, 1912, they entered upon the land and erected thereon a sign or advertising board 50 feet long and 10 feet high, and that later another section 25 feet long and 10 feet high was added. At the top of this sign were the words "Holland Advertising Service," the name of the firm operating the sign. The sign was used for the purpose of posting advertisements of the goods, wares, and merchandise of different persons or dealers who rented space on said sign for said purpose. The sign was erected near the edge of the land next to and near the Santa Fé Railway line and the Rosedale highway, the situation being such as to make it a "very advantageous place for a signboard." Appellees went on the land from one to two or three times a month to change the advertising on the signboard, and occasionally to cut the grass and weeds in front of the signboard and between it and the roads during the time they claim to have had possession of the land. The sign was substantially built, and cost some $150. At the time appellees erected the sign upon the land, the owner had moved off. He had lived in an old and considerably dilapidated house situated on the land and had cultivated a garden thereon, and there was an old and somewhat out-of-repair fence around the land, except that there was no fence along the line of the Santa Fé railroad. Appellees at times had this old fence repaired. The property theretofore had been used for residential purposes only. H. B. Majors owned the land at the time appellees erected the sign, but had moved off of same about 1911. Appellants purchased the land from Majors in 1923, immediately took possession of same, and requested appellees to remove the sign. Appellees removed the sign, but did so under protest and for fear of trouble. About a year afterwards they filed this suit for the title and possession of the land.

The nature and extent of appellees' possession is shown by the testimony of W. E. Holland, one of the appellees. Among other things, he testified:

"I went on the land in controversy about January 1, 1912, took possession of same after trying to find out the owner of the ground, erected some signboards on the land. * * * I gave my men orders to keep the fence up, repair and keep the gate closed in front of the board, and keep the grass and weeds cut in front of the board. I have occupied that place with the signboard continuously since January 1, 1912. I occupied the land continuously with a sign board and used the land that way during these eleven years up to this time. I claimed the land as mine at the time I put up the first signboard in 1912. I told my wife and son and probably others that we couldn't find the owner of that place, and that I would claim that ground, and I have claimed it as mine against everybody since that time. * * * I was on the land from one to three times á month to change signs and put on new ones, and repainted the signboard, and cut the weeds on the lot, and repaired it and kept up the fence from time to time and exercised such supervision and control over the land as any owner using it for that purpose would have done."

On cross-examination he testified:

"* * * Before I put the signboard on the land, I knew I didn't own the land and was not claiming it. I made inquiries around to find out the owner in order to make a contract to put the sign there. I couldn't find the owner. Some one told me the owner's name, but stated he had left town, and nobody knew where he had gone. * * * I then conceived the idea of holding the land by limitation right then, and as the owner was away and possibly would never come back, I would just claim that land by limitation. When I went on the land January 1, 1912, I put the signboard on it and kept the fence up and the grass cut around the board so you could see the sign; the only place I kept the grass cut was in front of the sign, between it and the road, so that people going by could see the signs displayed on the board. I gave permission to a fellow out there to put his stock on there to graze. That was Mr. Webber, who lived next door to the land in controversy. * * * The only possession I ever had of this property is the signboard, and that is the only use I put it to; that is all the use I put the land to. That signboard was advertising some one else's goods. Well, I went out there, my son and I went out there pretty often to look over the property on Sunday afternoons, to look over it to see if it was all right, and we would get out and walk through there and talk with Mr. Webber across the fence in his house. We kept our supervision over the property, but the only occupancy was this signboard; yes, that is the truth, our only occupancy was the signboard."

[1] We do not believe that appellees' possession of the land in controversy was such as to support the ten years' statute of limitation. Article 5675, Texas Complete Statutes 1920, provides:

"Any person who has the right of action for the recovery of any lands, tenements or hereditaments against another having peaceable and adverse possession thereof, cultivating, using or enjoying the same, shall institute his suit therefor within ten years next after his cause of action shall have accrued, and not afterward."

Article 5681 defines, "adverse possession," and reads:

"'Adverse possession' is an actual and visible appropriation of the land, commenced and

continued under a claim of right inconsistent with and hostile to the claim of another."

In order to make a good claim by adverse possession, the true owner must have actual knowledge of the hostile claim, or the possession must be so open, visible, notorious, distinct, and hostile as to raise the presumption of notice that the rights of the true owner are invaded intentionally and with the purpose of asserting a claim of title adverse to his, so patent that the owner could not be deceived, and such that if he remains in ignorance thereof it is his own fault. Houston Oil Co. v. Stepney (Tex. Civ. App.) 187 S. W. 1078 (writ denied); 1 Cyc. 997–999; 1 R. C. L. 700, 701. The acts relied upon to establish adverse possession must be distinct, of such character, and exercised in such way as to acquaint the owner, should he visit the land, with the fact that a claim of ownership adverse to his is being asserted. Nona Mills Co. v. Wright, 101 Tex. 14, 102 S. W. 1118. Doubtful acts, which do not, or which are not of a nature to, clearly indicate the intention with which they are performed, cannot be regarded as amounting to adverse possession. The acts of ownership upon the part of the limitation claimant must be such as to unmistakably indicate a claim of exclusive ownership in the occupant. Evans v. Templeton, 69 Tex. 375, 6 S. W. 843, 5 Am. St. Rep. 71; Satterwhite v. Rosser, 61 Tex. 166, 171; 1 Cyc. 985.

Under article 5681, supra, did the putting of the sign on the land, and maintaining it there, evidence an intention to claim the land and to exclude the real owner from the whole tract? Was it sufficient to have put an ordinarily prudent person on notice of the fact that his land was in the adverse possession of another? We do not think so. The question of adverse possession is to be viewed strictly, and every presumption is in favor of a possession in subordination to the rightful owner.

In the case of Sellman v. Hardin, 58 Tex. 86, it was held that where one claimed land, used firewood from it, used it for ranch purposes for horses and cattle (though not inclosed), and built and used hogpens on the land, and kept other people from trespassing on it, the acts of ownership and use of the land were not such as to constitute adverse possession.

In Murphy v. Welder, 58 Tex. 235, 241, it was held that pasturing cattle and herding sheep upon the land, and by means of a dam making a water tank on the land around which a fence was erected, did not evidence such adverse possession as would support limitation.

In Fuentes v. McDonald, 85 Tex. 132, 20 S. W. 43, it was held that the grazing of numerous sheep and goats in charge of shepherds, and the building and maintaining of goat and sheep pens erected of posts and brush, which were repaired every year and which were maintained for nearly 20 years, did not constitute adverse possession.

In Nona Mills Co. v. Wright, 101 Tex. 14, 102 S. W. 1118, the record disclosed that Warren Brown entered upon the land in controversy for the purpose of hunting game and intended to make it his home and to claim 160 acres of land for himself under the ten years' statute of limitation. He built a camp and remained upon the place for about a year, when he let his brother, who was living with him, have the claim, and Warren Brown moved away and settled upon other land. The brother of Warren Brown, after staying on the premises for about a year, got into trouble and had to leave the county, leaving one Devore in possession, who failed to pay for the claim, and turned the possession over to Warren Brown, and the latter moved upon it again, at which time there was a boxhouse and smokehouse upon the land, with some three acres under fence. It did not appear by whom nor when these improvements were placed upon the land. Warren Brown later sold his claim, right, and title by an instrument in writing to Henry Peterson, who took possession when Brown moved out. Peterson conveyed his claim to the 160 acres to L. P. Wright, defendant in the suit. The first possession by Brown was taken in 1890. The suit was filed in 1903, so that the possession of Brown and his successors was continuous for more than ten years. The Supreme Court, speaking through Judge Brown, held that the possession, use, and acts of ownership shown were not such as would notify the owner that his land was being claimed by another, and did not constitute adverse possession. In passing upon this question, Judge Brown says:

"To constitute adverse possession, the party occupying the land must in some way appropriate the land for some purpose to which it is adapted. Mere occupancy of land without any evidence of an intention to appropriate it will not support the statute of limitation. Sellman v. Hardin, 58 Tex. 81 [86].

"The possession of the land from the time Warren Brown first entered upon it in 1890 or 1891 was continuous, passing from him consecutively to his brother, who delivered it to Devore, who returned it to Warren Brown in 1894. Warren Brown made no improvements upon the land during his first occupancy, except to build a camp. He went upon the land for the purpose of hunting 'varmints' as he states. He evinced no purpose to use the land in any way whatever, and did not use it except in the mere act of pitching his camp thereon. The possession to be adverse must be of that character which would notify the owner of the intention of the occupant of the land to appropriate it to his own use. It surely cannot be contended that the camping upon a tract of wild land would constitute such adverse possession as would notify the owner that his land was being claimed by another. There is not as much evidence of an intention to appropriate the land by Brown as there was in the case

cited above, in which the claimant maintained hog pens upon the land, and had used it for the purpose of feeding his hogs thereon for many years, during which time he had cut and carried away firewood from it, and protected the land from trespass by other people, at the same time using it as a ranch for his cattle and horses. In that case (Sellman v. Hardin, cited above), the court said:

"'The court did not err in holding that the evidence offered by the appellant was not sufficient to show such adverse possession as would sustain his plea of limitation.'

"There is no evidence of the construction upon this land of anything more permanent than the camp pitched by Warren Brown, nor of any use of the land until the year 1894, when Brown says that he returned to the land, found upon it a house, a room 18x20 feet, and a smokehouse, but he does not state when these houses were constructed upon the land, nor by whom. Upon this testimony the jury could not find that the houses had been built upon the land and occupied at a time ten years prior to April 22, 1903. Therefore there is no evidence of such adverse possession of the land by Brown and those who succeeded him, *prior to his second occupancy*, as would justify a verdict in favor of the defendants on the ten years statute, and the court correctly instructed the jury to find against them upon that issue." (Italics ours.)

In O'Hanlon v. Morrison (Tex. Civ. App.) 187 S. W. 692, 696, keeping one's buggy, wagon, and mower on a lot, piling lumber on same, and tying cows out to graze thereon during grass seasons, were held to be too casual and not of a character to notify the true owner of the lot of an intent to hold the property adversely to him.

In Gouverneur v. Ice Company, 57 Hun, 474, 11 N. Y. S. 87, it was held that one taking possession of a pond that froze over and cutting, shipping, and selling ice therefrom, and erecting icehouses on land adjacent to the pond, but not on the same tract, and storing up ice for the limitation period, did not amount to adverse possession.

In Wheeler v. Spinola, 54 N. Y. 378, it was held that going on to a vacant lot and cutting and appropriating grass annually for the limitation period did not constitute adverse possession.

In Miller v. Downing, 54 N. Y. 631, it was held that to use a vacant lot for placing wood and maintaining a wood pile on same and for banking or burying potatoes did not amount to such possession as would be considered adverse.

Numerous other similar decisions might be cited, but it is believed that these are sufficient to illustrate the rule that the acts of ownership exercised over the property by the limitation claimant must be substantial and such as to distinctly and unmistakably indicate to the true owner that his property is being adversely held and claimed by another.

[2] Furthermore, the land in controversy was used for residential purposes, had a house and garden on it, and was inclosed by a fence before the owner moved off; but when appellees took possession they never occupied the house, or placed a tenant in same, or in any manner used the premises for the purposes to which they had theretofore been used and were adapted. The only use to which they put the land was to erect the sign at or near the edge of same, near the railroad and the public highway, for advertising purposes. It is a matter of common knowledge that similar signs are to be found upon and along railroads and public highways and at crossroads and advantageous points all over the country, both in town and out in the rural sections. The sight of the sign merely standing upon the land, no other use being made of the premises, would have little or no probative force, to convey notice to the owner that those placing the sign on the land were intending to claim it. We do not believe that the presence of such sign, under the circumstances shown, was calculated to indicate to the owner of the land upon which it was placed that an adverse claim to the land was being thus made by the person so placing the sign.

The judgment of the court below should be reversed, and judgment here rendered for appellant, and it is so ordered.

Reversed and rendered.