**CHURCHMAN v. RUMSEY et al.**

**No. 5472.**

Court of Civil Appeals of Texas. Amarillo.

Nov. 2, 1942.

Rehearing Denied Dec. 21, 1942.

W. H. Russell, of Hereford, and E. F. Lokey, of Farwell, for appellant.

Aldridge & Aldridge, of Farwell, and Underwood, Johnson, Dooley & Wilson, of Amarillo, for appellees.

STOKES, Justice.

Appellee, Marion Doud Rumsey, joined by her husband, Henry A. Rumsey, filed this suit against appellant, H. C. Churchman, in trespass to try title to 160 acres of land located in Parmer County. Appellant answered by the general issue and set up title under the statutes of five and ten years limitation. The case was submitted to the court without the intervention of a jury and judgment was rendered in favor of the appellees from which appellant has prosecuted this appeal.

Appellant contends, first, that the undisputed evidence, both the documentary evidence and the testimony of the witnesses, established his allegations to the effect that he held and claimed peaceable and adverse possession of the land in question, cultivating, using, and enjoying the same, and paying all taxes due thereon in such manner as to perfect a title in him under the five-year statute of limitation, Article 5509, R. C.S.1925; and, secondly, that the undisputed evidence showed that he held and claimed peaceable and adverse possession of the land in question, cultivating, using, and enjoying the same for a period of more than ten years before the institution of the suit, in such manner as to perfect a title in him under the ten-year statute of limitations, Article 5510, R.C.S.1925, and that the court therefore erred in entering judgment for appellees and in refusing to render judgment in favor of appellant.

It was stipulated at the trial that the record title to the land was in appellee, Mari-

on Doud Rumsey, and that she was entitled to recover unless defeated by the defenses of appellant based upon the statutes of limitations above mentioned. The record shows that before 1909, Elizabeth R. Doud, mother of appellee, Marion Doud Rumsey, owned the land in controversy and on September 9th of that year she, joined by the appellees, conveyed it to Sarah C. Burnley who executed a number of promissory notes as part of the purchase price, to secure the payment of which a vendor's lien was retained in the deed, and as additional security Mrs. Burnley executed a deed of trust; that about the year 1916, some of the notes not having been paid at maturity, the deed of trust was foreclosed and the land was bought in by Elizabeth R. Doud. Mrs. Doud later died and the appellee, Marion Doud Rumsey, as the sole heir of her mother, inherited the land.

On a date not shown by the record, Mrs. Burnley died, leaving four adult children, three of whom, during the year 1925, conveyed their purported interests in the land to their sister, Mrs. Grace Slade, and her husband, Harry Slade. The witness, W. R. Noble, testified that about the year 1925, Harry Slade and his wife, Grace Slade, who were residents of the State of Iowa, came to his house, which was located near the land in controversy, and told the witness that the land belonged to the Doud estate. He said Harry Slade told him that his wife, Grace Slade, was the daughter of Mrs. Doud and he offered to lease the land to the witness Noble if Noble would pay the taxes each year. He said he accepted Slade's proposition and leased the land in that manner over the entire period from then until January 1, 1939. The record further shows that, with the knowledge and consent of Harry Slade, Noble subleased the land to W. S. Menefee, who owned land adjoining it, and that Menefee cultivated it each year from the spring of 1927 to, and including, the year 1937. On November 23, 1927, Harry Slade and W. R. Noble entered into a written lease contract under which Noble leased the land from Slade for a term of three years, and on November 26, 1927, Harry Slade and wife, Grace Slade, conveyed the land by general warranty deed to appellant, H. C. Churchman. Churchman testified that shortly after this deed was executed he notified Noble he was the owner of the land but told Noble he might continue his occupancy and possession under the lease contract of Harry

Slade. On January 1, 1931, when the Slade lease expired, a similar lease was entered into by appellant Churchman and W. R. Noble, under which Noble leased the land from Churchman for three years, and upon expiration of that lease on January 1, 1934, another like lease was entered into between them under which Noble leased the land for still another term of three years, ending January 1, 1937. Noble continued to use the land under a verbal lease until September 4, 1939, when Churchman and J. M. Osborne entered into a similar lease contract under which Osborne seems to have agreed to cultivate the land as the tenant of appellant for three years beginning January 1, 1940 and terminating December 31, 1942. Shortly after their execution, all of these written leases were filed in the office of the county clerk of Palmer County and duly recorded in the Deed Records. The only consideration Noble ever paid to Slade or appellant, as far as the testimony shows, was the payment of the taxes on the land.

The testimony shows that Noble probably had his conversation with Slade in 1925, but the only possession Noble ever had began in the spring of 1927, when he subleased the land to Menefee. The taxes were paid before they became delinquent for the years 1925 to 1929, inclusive, and, while the testimony shows they were paid each year from 1930 to 1940, inclusive, it is not shown that during those years they were paid before they became delinquent, and since Noble did not take possession until the spring of 1927, after the taxes were paid for the preceding year, there is no showing that the possession and payment of taxes before they became delinquent were concurrent for more than four years, namely, for the years 1927 to 1930, inclusive.

The law is well settled in this State that where title to land is claimed under the five-year statute of limitation, Article 5509, R.C.S.1925, it must be shown that the taxes were paid before they became delinquent and the party claiming such title must have had peaceable and adverse possession thereof for the statutory period, cultivating, using and enjoying the same, concurrently with the payment of taxes before they became delinquent. Baker et al. v. Fogle et al., 110 Tex. 301, 217 S.W. 141; Burton et al. v. Holland et al., Tex.Civ.App., 278 S.W. 252; Bryson v. Ferrill, Tex.Civ.App., 25 S.W.2d 1001; Gramm et al. v. Coffield et

al., Tex.Civ.App., 116 S.W.2d 1089; Simonds et al. v. Stanolind Oil & Gas Co. et al., 134 Tex. 332, 114 S.W.2d 226; Taylor v. Brymer et al., 17 Tex.Civ.App. 517, 42 S.W. 999; Converse v. Ringer, 6 Tex. Civ.App. 51, 24 S.W. 705.

Appellant was therefore not entitled to recover under the five-year statute of limitation, and his assignment of error pertaining to that question will be overruled.

Turning now to the question of whether appellant is supported by the testimony in his contention that he perfected title to the land under the ten-year statute of limitation, the testimony shows that neither appellant nor his tenant Noble personally occupied or cultivated the land at any time. The only possession appellant claims is that which was held by the sub-tenant of Noble under his lease contracts with Noble. The testimony shows without dispute that one Beardon broke out the land and cultivated it during the year 1926, but he was not a tenant of any of the parties connected with this litigation. The first possession Noble ever had began in the spring of 1927, and he took and held possession only through his subtenant Menefee. Therefore, the only possession ever held by appellant or Noble was such possession as was held by Menefee. In addition to Noble's testimony that Slade represented himself to be the son-in-law of Elizabeth R. Doud, the testimony shows that when he subleased the land to Menefee, he told Menefee that he had secured a lease on the Rumsey land from the son-in-law of Rumsey. Menefee testified that he never knew or heard anything about appellant's asserting claim to the land. He said he knew nothing about any leases from appellant to Noble, that he never saw appellant on the land, and, in fact, never saw appellant at any time until the day the case was tried. There is no showing that the appellant ever communicated with Menefee in any way, and we think the testimony is clear that Menefee thought he was occupying and cultivating land that belonged to appellee, Mrs. Rumsey. It is not claimed that appellees had actual notice of any occupancy or claim of appellant and we find nothing in the testimony that would indicate to appellees, or anyone else who might investigate, that the possession being held by Menefee was hostile to appellees' title. Neither Menefee nor Noble claimed or asserted at any time that he was holding or possessing the land for ap-

pellant and, so far as the record shows, no person in the community was ever informed, or had reason to believe, that anyone possessed, used, or cultivated the land in hostility to appellees' title.

The law is established in this State, both by the statute, Article 5515, R.C.S.1925, and many decisions of our courts to the effect that in order to establish title under the ten-year statute, the adverse possession must be an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with, and hostile to, the claim of another. In order to establish such a title, the true owner must have actual knowledge of the hostile nature of the claim, or the possession must be so open, visible, notorious, and hostile as to raise the presumption that the owner had notice that his rights were being invaded intentionally and with the purpose of asserting an adverse title to his land. It is said that, in the absence of actual notice, the possession must be so patent that the owner could not be deceived and such that if he remains in ignorance thereof, it is his own fault. Houston Oil Co. of Texas v. Stepney et al., Tex.Civ.App., 187 S.W. 1078; Burton et al. v. Holland et al., Tex.Civ. App., 278 S.W. 252.

We think it is conclusive that if the appellees had investigated the possession which is now being asserted by appellant, they would have found the subtenant Menefee in actual possession of the land as a subtenant of Noble and that Noble had informed Menefee that he, Noble, had a lease on the land from appellees. Menefee so understood his possession and, while Noble signed the written leases under which he purported to lease the land from appellant, Noble understood that appellant had acquired the title from Harry Slade and his wife, who he had every reason to believe were the successors, by inheritance, of the ancestor of appellee, Mrs. Rumsey, namely, her mother, Elizabeth R. Doud. Noble testified that subsequently to his original lease from Harry Slade, the latter came back to the place and brought appellant Churchman with him. Noble said appellant told him on that occasion that he was an attorney, but did not tell him he was interested in the land or that he intended to purchase it. Nowhere in the testimony is it shown that either Slade or appellant ever informed Noble that either of them was making use of Noble's possession in hostility to the ti-

tle of appellees, and we think the court was warranted in concluding that appellant wholly failed to show such possession of the land as would entitle him to recover under the ten-year statute of limitation, Articles 5510, 5515, R.C.S.1925.

We have carefully considered all of the assignments of error and contentions made by appellant and, in our opinion, no error is shown. The judgment of the court below will therefore be affirmed.