## NONA MILLS COMPANY v. L. P. WRIGHT ET AL.

### No. 1717.  Decided June 12, 1907.

**1.—Deed—Description—Conveyance of Existing Right.**

A deed made in 1854 and describing the land conveyed only as being a league and labor donated to the grantor by the State "for losses suffered during the Mexican Invasion" purported to convey a right in existence at the time, and did not describe a right to the grantor to such quantity of land created by special Act of the Legislature in 1858.  But where such special Act did not purport to create the right, but merely authorized the Land Commissioner to issue to him the certificate "on account of wounds received in the service of the late Republic of Texas, in 1836, which have disabled him," and a law of the Republic enacted in 1827 had entitled him to a grant for that amount for disability from such wounds, to be shown by certificate of the Board of Land Commissioners, a board no longer in existence in 1858, the certificate received under the Act of 1858 was for the land to which the person was entitled under the law of 1827, which was an existing right at the time of his conveyance in 1854 and covered by the description therein.   (Pp. 18–21.)

**2.—Slave—Capacity to Own Property.**

A slave could not, under the laws of Texas, become the beneficiary of a trust.   (P. 21.)

**3.—Same—Recitals in Deed—Burden of Proof.**

The recital in a deed of trust that the beneficiary was formerly a slave of the grantor, but, at the time of the coveyance, a free woman, throws upon those questioning her right to take under the deed the burden of proving that she was a slave at the time of its execution.   (P. 21.)

**4.—Same—Prohibition of Emancipation.**

Where a slave and her owner lived in Texas before its independence, his recital, in a deed for her benefit made when Texas was a State of the Union, that she was then a free woman, was not disproved by the fact that then existing laws prohibited her emancipation, it having been permitted by the laws of Mexico.   (Pp. 21, 22.)

**5.—Limitation—Adverse Possession.**

Mere occupancy of land without any evidence of intention to appropriate it will not support limitation.  The establishment upon it of a camp by one pursuing thereon the occupation of a hunter did not constitute adverse possession under the ten years statute.   (Pp. 22–24.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Hardin County.

Nona Mills Company brought trespass to try title against L. P. Wright and others and recovered judgment.  On defendants' appeal the judgment was reversed and rendered in their favor and the company obtained writ of error.

*Taliaferro & Nall, W. W. Cruse* and *Greer, Minor & Miller,* for plaintiff in error.— The Court of Civil Appeals erred in its finding and holding that the land in controversy was not embraced by the

deed of January 12, 1854, made by Isaac D. Hamilton to John N. Dupree in trust for Maria Hamilton. Selman v. Wolfe, 27 Texas, 72; Warvelle on Vendors, (2d ed.), p. 176; Pierson v. Sanger, 93 Texas, 160; Patterson v. Patterson, 27 S. W. Rep., 838; Gresham v. Chambers, 80 Texas, 547; Jackson v. Root, 18 Johns., 60; Jackson v. Alexander, 3 Johns., 484; Smith v. Westall, 76 Texas, 509; Harris v. Broiles, 22 S. W. Rep., 421; Clopper v. Sage, 14 Texas Civ. Apps., 297; Peterson v. Ward, 5 Texas Civ. Apps., 208; State v. Zanco's Heirs, 44 S. W. Rep., 528; Rogers v. Kennard, 54 Texas, 34; Soye v. Maverick, 18 Texas, 101; Ralston v. Skerrett, 82 Texas, 489-492; Hines v. Thorn, 57 Texas, 98; Blum v. Looney, 69 Texas, 3.

The inception of the title to the land in controversy was the act of Dec. 18, 1837, granting one league of land to each man "permanently disabled by loss of eye, arm or limb, or such other bodily injury as by certificate of the Board of Land Commissioners shows his incapacity for bodily labor, by wounds received in the service of Texas." It is clear that the deed made by Hamilton in 1854 for the use and benefit of Maria Hamilton was intended to, and did, pass title to whatever tract had been, in the language of that deed "donated to said Hamilton for losses suffered during the Mexican invasion," and that deed by Hamilton divested him and his heirs of any claim to the land in controversy.

Although at the date of his deed to J. N. Dupree in trust for Maria Hamilton (Jan. 12, 1854), Isaac D. Hamilton had no title to the particular land in controversy, still, as the act of December 18, 1837, declared each person described, "entitled to one league of land," there was undoubtedly guaranteed to him, by that act, the right to one league of land if he could show himself to be a person described by it; this right, although neither real nor personal property in esse, was nevertheless an inchoate right to get that quantity of land out of some part of the public domain in the manner provided by the act or in such other manner as might be afterward provided and determined by the law-making power, and that right was a right or interest of such character as to be the subject of sale. Johnson v. Newman, 43 Texas, 639; Hermann v. Reynolds, 52 Texas, 395; Robertson v. DuBose, 76 Texas, 7; Neal v. Bartleson, 65 Texas, 482; Graham v. Henry, 17 Texas, 166.

The Court of Civil Appeals erred in holding that Isaac D. Hamilton was not entitled to the land granted by the act of December 18, 1837. State v. Zanco's Heirs, 44 S. W., 528 (writ of error refused by Supreme Court); Franklin v. Kesler, 25 Texas, 144; Franklin v. Tiernan, 56 Texas, 623; Palmer v. Curtner, 55 Texas, 64; Burkett v. Scarborough, 59 Texas, 497; Styles v. Gray, 10 Texas, 506; Massey v. Papin, 65 U. S., 362; Landes v. Brant, 10 How., 348; Act of April 27, 1846 (P. D., art. 4074); Act of Jan. 31, 1874 (P. D., arts. 4075 to 4078); Act of Feb. 7, 1860 (P. D., arts. 1149 et seq.); Graham v. Henry, 17 Texas, 166; Davis v. Bargas, 88 Texas, 662; Merriweather v. Kennard, 41 Texas, 275; Capp v. Terry, 75 Texas, 396; Masterson v. Todd, 6 Texas Civ. App., 133; Perry v. Glass, 25 Texas, 370; Johnson v. Newman, 43 Texas, 639; Grayson v. Tyler, 80 Ky., 363; Ogden v. Bosse, 86 Texas, 344.

The evidence in this case shows without dispute that Maria Hamilton, on January 12, 1854, when Hamilton made the deed to Dupree in trust, and in 1859, when Hamilton died, was a free colored woman, and the heirs of Isaac D. Hamilton are estopped, by the recitals in their ancestor's deed, from denying that she was free. Kimbro v. Hamilton, 28 Texas, 560; Fisk v. Flores, 43 Texas, 340; Burk v. Turner, 79 Texas, 278; Williams v. Corzine, 85 Texas, 499; Martin v. Weyman, 26 Texas, 460; Guess v. Lubbock, 5 Texas, 540; Le-Grand v. Darnall, 2 Pet., 664; Leiper v. Hoffman, 26 Miss., 615; Dickerson v. Colgrove, 100 U. S., 578.

The burden of proof in this case was upon defendants in error to show that Maria Hamilton was a slave at the time of the transaction in question, yet not only is there no evidence showing that she was a slave or disqualified to hold property, but, on the contrary, all the evidence shows that she was a free person, and the presumption is that she was either not a resident of the State, or, if a resident here, that she was a resident in Texas by authority of law. Moore's Administrator v. Minerva, 17 Texas, 21; Carter v. Marks, 17 Texas, 539; Hilliard v. Frantz, 21 Texas, 192, 199; Webster v. Corbett, 34 Texas, 264; Becht v. Martin, 37 Texas, 730; Constitution of 1845, art. 8, sec. 1 (H. D., p. 76); Joint Resolution of June 5, 1837 (H. D., p. 777); Act of Dec. 14, 1837 (H. D., Arts. 2539, 2540, 2543); Act of Dec. 12, 1840 (H. D., Arts. 2570, 2571); Joint Resolution of June 5, 1857 (O. & W. Dig., p. 25, art. 939); Act of Jan. 27, 1858 (O. & W. Dig., arts. 940 et seq.); Jones v. Laney, 2 Texas, 345; Wade v. American Col. Society (Miss.), 45 Am. Dec., 325; Mitchell v. Wells, 37 Miss., 235.

The evidence in this case on the subject of limitation was not such as to. authorize the Court of Appeals to render a judgment. Harnage v. Berry, 43 Texas, 570; Towery v. Henderson, 60 Texas, 291-296; League v. Snyder, 5 Texas Civ. App., 15; Tyler v. Davis, 61 Texas, 674.

 : W. D. Gordon and John L. Little for defendants in error the heirs of Hamilton (Don A. Bliss and E. C. McLean of counsel upon motion for rehearing).—The inception of the title to the land in controversy was the act of February 13, 1858, granting the certificate in question to Isaac D. Hamilton, which act was one of sovereign grace and bounty, bestowed upon him by the state as a memorial · of its gratitude; and, therefore, the State having designated Isaac D. Hamilton as the object of its grace, and having limited the grant to him individually, the District Court of Hardin County had no power or right to divert the benefits of this grant to some one else. McKinney v. Brown, 51 Texas, 94; Eastland v. Lester, 15 Texas, 102; Causici v. La Coste, 20 Texas, 286; Ralston v. Skerrett, 82 Texas, 488; Todd v. Masterson, 61 Texas, 618.

The deed made in 1854 did not purport or attempt to transfer the naked possibility of an expectancy, which the grantor may have had, but purported only to transfer property then in esse; and the court was not authorized to construe it as a conveyance of property subsequently acquired, contrary to the express terms of the instrument

itself. Hart v. Gregg, 32 Ohio St., 505; Warvelle on Vendors, sec. 40; Pennock v. Coe; 23 Howard, 117; McCall v. Hampton, 33 L. R. A. (Ky.), 270; Hale v. Hollon, 90 Texas, 435.

In the absence of any right or title, legal or equitable, in esse, an attempt to transfer and convey a naked possibility, dependent upon the right of a subject to petition the sovereign for the exercise of its grace and bounty in his behalf and dependent upon the sovereign granting such prayer, is ineffective, not the subject of contract, contrary to public policy, and void.

At the time of Hamilton's death in 1859 his estate could not vest in his slave directly nor indirectly, in the absence of an express provision for the manumission of such slave beyond the borders of Texas, no power being given to the master to free his slave in Texas; and, the instrument attempting, in violation of the law and the settled policy of the State, to divert property directly or indirectly to the slave was void ab initio, and at his death in 1859 all his estate descended and vested in his legal heirs, and could not be divested by the course of events subsequently occurring, such as the emancipation of the slave. Purvis v. Sherrod, 12 Texas, 140; Hunt v. White, 24 Texas, 648; Philleo v. Holliday, 24 Texas, 41. Contra: Webster v. Corbett, 34 Texas, 264; Becht v. Martin, 37 Texas, 730.

The Act of 1837 being a donation act, not based upon any precedent obligation of the government, a beneficiary thereunder who did not avail himself of its generous provisions had no claim against the government, legal or equitable, and any exercise of the legislative power in his behalf thereafter would be, as was the original, but an act of sovereign grace and bounty.

[ON MOTION FOR REHEARING.]—Whether the woman Maria was a slave at the time of the execution by Isaac D. Hamilton of the conveyance to Dupree in trust for her is a question of fact, upon which a finding by the Court of Civil Appeals is absolutely conclusive on this court if there is any evidence tending to sustain such finding. Constitution 1845, art. 5, sec. 6; Texas & N. O. Ry. Co. v. Echols, 87 Texas, 346; Choate v. Railway, 91 Texas, 409; Texas Loan Agency v. Fleming, 92 Texas, 463.

The statement contained in the opinion of the Court of Civil Appeals in this case amounts to a finding of fact by that court that at the time of the execution by Isaac D. Hamilton of the conveyance in trust for the woman Maria, she was a slave. Warren v. City of Denison, 89 Texas, 557; Dillingham v. Strycharski, 26 S. W. Rep., 642.

There was evidence in the record tending to sustain this finding of fact, made by the Court of Civil Appeals. Maria Hamilton's color was presumption of her being a slave. Boulware v. Hendricks, 23 Texas, 669; Hall v. U. S., 92 U. S., 27; Fox v. Lambson, 8 N. J., 275; Field v. Walker, 17 Ala., 80; Jackson v. Bob, 18 Ark., 399; Woodland v. Newhall's Admr., 31 Fed. Rep., 434; 25 A. and E. Encl. Law, 1090, and numerous authorities cited in note.

A. T. *Watts,* for defendants in error, Wright, Chester & Roberts.—
The undisputed evidence shows that the defendant L. P. Wright and
those through whom he claimed had actually resided upon, occupied,
held, used and enjoyed the improvements described in the answer, and
claimed the one hundred and sixty acres of land including the same,
and had held peaceable and continuous possession thereof, cultivating,
using and enjoying the same, for more than ten years next before
plaintiff instituted this suit, and therefore the court erred in per-
emptorily instructing the jury to return a verdict for these defend-
ants for only fourteen acres of land including said improvements.

MR. JUSTICE BROWN delivered the opinion of the court.

Isaac D. Hamilton was a member of Captain Jack Shackelford's
company, called the Red Rovers, in the service of the Republic of
Texas, and at Goliad Hamilton was seriously wounded, which dis-
abled him for labor. On the 18th day of December, 1837, the
Congress of the Republic of Texas enacted this statute: "An Act
making provisions for persons who have been permanently disabled
in the service of Texas.

"Section 1. Be it enacted by the Senate and House of Represen-
tatives of the Republic of Texas, in Congress assembled, that Thomas
William Ward, James C. Neill, James Belden, John Thomas, Wash-
ington Somers, and all others who have been permanently disabled by
loss of eye, arm or limb, or other bodily injury, as by certificate of
the Board of Land Commissioners, shows his incapacity for bodily
labor, by wounds received in the service of Texas, be and they are
hereby declared to be entitled to one league of land each, as a
testimony of the gratitude of this Republic.

"Sec. 2. And be it further enacted, that the lands hereby granted
shall be included within that class of claimants to whom six months'
preference has been given."

On the 13th day of February, 1858, the Legislature of the State
of Texas enacted the following statute: "An Act for the relief of
Isaac D. Hamilton.

"Section 1. Be it enacted by the Legislature of the State of
Texas, that the Commissioner of the General Land Office be and
he is hereby required to issue to Isaac D. Hamilton a certificate for
one league of land, on account of wounds received in the service of
the late Republic of Texas in 1836, which have disabled him, and
said certificate may be located upon any of the vacant public domain
unappropriated, in the same manner as other certificates, and that a
patent issue therefor without any other fee than the customary one
for patents." Under this statute a certificate was issued to Hamil-
ton for a league of land and was located and patent was issued there-
on on the —— day of ————, 1869, which is the land in con-
troversy in this suit.

Nona Mills Company instituted this suit in Hardin County on the
22d day of April, 1903, against a number of parties, some of whom
disclaimed any interest in the land and therefore need not be men-
tioned further. Mid Glaze, G. W. Hooker and L. P. Wright all
answered by different pleas but it is unnecessary to state the nature

of their pleadings.   John H. Hamilton and a number of other persons intervened in this suit claiming the land as heirs of Isaac D. Hamilton.   There is no dispute about the heirship of the interveners, and we will not state any facts in connection therewith.   The Nona Mills Company claims the land under the following title:

Isaac D. Hamilton lived in Harris County and was the owner at one time of a slave named Maria, and in the year 1854, Hamilton and John N. Dupree jointly executed this instrument: "The State of Texas, Galveston County.   This indenture made and entered into this 12th day of January, 1854, between Isaac D. Hamilton, of the city of Houston, Harris County, and John M. Dupree, of the county aforesaid, Witnesseth, that whereas the said Hamilton is now seriously sick, and indisposed in Galveston county and is indebted in a large sum of money to Maria a free negro woman who was formerly a slave belonging to said Hamilton and to whom he is justly indebted for services since her freedom, and for cash borrowed of her in the sum of five thousand dollars, and being desirous of securing the payment of said debt to said Maria, and for that purpose being desirous and willing to convey the property herein named directly to her in discharge of said debt but for the doubt as to her capacity in law to hold the same and for the sole purpose of placing all the property hereinafter named in such a position that the said Maria may have the entire amount of said property for her own use and benefit and the proceeds thereof.   Therefore, this indenture witnesseth that for and in consideration of the premises, and also for the further consideration of one dollar to the said Hamilton in hand paid by the said Dupree at and before the sealing and delivery of these presents, the said Isaac D. Hamilton hath granted, bargained and sold, and by these presents doth grant, bargain, sell and convey unto the said John N. Dupree, his heirs and assigns the following named real estate and personal estate, to wit:   All that piece or parcel of land lying in the city and county of Galveston, State of Texas, known and designated on the map of said city as lot number eleven in block number five hundred and four, with all the buildings and improvements thereon standing and all the household and kitchen furniture now in use in said building; also one-third of a league of land the same being the headright of said Hamilton and situate and located in said State in one of the counties of said State not now recollected, and reference for a full description of said land is here made to the patent issued for the same; also one league and labor of land donated to said Hamilton by the State of Texas for losses suffered during the Mexican invasion, also two gold patent lever watches.   To have and to hold the above granted and bargained premises, real and personal estate, unto the said Dupree, his heirs and assigns forever.   Upon trust only and for the sole purpose of holding the same for the benefit of said Maria and to sell the same at any time upon the request of the said Maria and after paying the necessary expenses of the sale of said real estate the remaining money to be paid over to the said Maria for her own sole use and benefit to be disposed of by her in such manner as she may deem proper and the said personal estate is to be delivered over to the said Maria upon her request to be

used or disposed of by her. In testimony of all of which we have hereunto set our hand and seals at Galveston this 12th day of January, 1854." The trust deed was signed by Dupree. The Mills Company acquired by regular conveyance all of the right which the foregoing instrument vested in Maria Hamilton. There is no dispute about the proposition that the Mills Company has the title, provided the instrument above copied vested in Maria Hamilton the title. Isaac D. Hamilton died in 1859, and John N. Dupree died in the year ——, leaving a will in which he gave all of his property to his wife, Cyrene Dupree, who, on Janauary 25, 1861, "as surviving wife, heir and executrix of John N. Dupree," conveyed to John Chapman, at the request of Maria Hamilton, all of the property mentioned in the deed from Isaac D. Hamilton to John N. Dupree, to hold on the same terms as expressed in the said deed; and, in 1876, Chapman conveyed the property by quitclaim to Maria Hamilton, who conveyed the land in controversy to Isaac S. Hurt January 4, 1879, and I. S. Hurt conveyed to Nona Mills Company. After Hamilton's death his estate was administered upon and the land in suit and Maria Hamilton's were placed upon the inventory. Maria Hamilton filed a petition in the Probate Court contesting the right of the administrator to hold the property but no action appears to have been had in said court as to said property.

The Nona Mills Company also claims title to the land by three, five and ten years statute of limitation, claiming that it had and held possession of the, land by certain tenants who succeeded each other from time to time. The facts with regard to the limitation will be stated so far as necessary in connection with the discussion of that question.

The question presented by this writ of error is, did the deed from Isaac D. Hamilton to John N. Dupree, as trustee, vest the title to the land in controversy in Maria Hamilton. This question embraces the following questions: (1) Did that deed sufficiently describe the land in controversy, and (2) was Maria Hamilton disqualified to take under the deed as a beneficiary. The land sued for was located, surveyed and patented by virtue of a certificate issued by the Commissioner of the General Land Office to Isaac D. Hamilton for one league of land by authority of the Act of February 13, 1858, above quoted. If Isaac D. Hamilton's right was derived primarily from that Act, then the deed to Dupree did not embrace it because it purported to convey a right in existence at the time of its execution. If the Act of 1858 stood alone the grant of the land to Isaac Hamilton could be derived from it by implication only, based upon the authority given to the Land Commissioner to issue the certificate, because there are no words in the law appropriate to express the grant of a right. The language "be and he is hereby required to issue to Isaac D. Hamilton a certificate," etc., is apt for directing the Commissioner to perform a duty in discharge of an existing obligation of the State, and when we look to the further language, "for one league of land on account of wounds received in the service of the late Republic of Texas in 1836, which have disabled him," we see that the consideration of the grant is the same

as that expressed in the law of 1837. Looking to the Act of 1837, we find that the grant of one league of land was made to four persons, by name, "and all other who have been permanently disabled by loss of eye, arm or limb, or other bodily injury, as by certificate of the Board of Land Commissioners, shows his incapacity for bodily labor, by wounds received in the service of Texas, be and they are hereby declared to be entitled to one league of land each." The Act of 1858 specifies Isaac D. Hamilton as being one of those who had been wounded in the service of the Republic in 1836 and whose wounds disabled him. The law creating the Land Board having been repealed, Hamilton could not secure his certificate from the Commissioner of the General Land Office, because he could not get the certificate from the Board of Land Commissioners; therefore, the Legislature ascertained the facts which the Board of Land Commissioners were required to find and certify, and then directed the Commissioner of the General Land Office to issue the certificate for the same quantity of land, for the same service and based upon the same fact of disability as were specified in the Act of 1837. We think it satisfactorily appears from a comparison of the two acts taken in connection with the application to the Legislature by Hamilton for relief in 1858, that the right of Hamilton was recognized as existing under the law of 1837 and the Act of 1858 was simply a relief law whereby Hamilton secured the certificate to which he was entitled under the former law. This being the case we see no reason to doubt the proper construction of the deed to be that Hamilton intended to convey to Maria Hamilton the league of land to which he was entitled under the Act of 1837. There are some discrepancies in the description but they are immaterial and will be discarded so as to give effect to the intention of Hamilton in making this deed

It is objected that Maria Hamilton was a slave at the time the deed was made by Isaac D. Hamilton to John N. Dupree and therefore the trust created in her favor was void. The proposition that a slave could not be the beneficiary of a trust is well settled in this State; we therefore do not refer to nor discuss any of the authorities upon that question. The recitals in the deed that Maria had been the slave of Isaac Hamilton and that she was then a free woman constitute all the evidence upon this subject so far as we have been enabled to find. The parties who claim that the deed of trust was void because of the fact that she was a slave at the time that it was executed had the burden upon them to prove her disqualification to receive the gift. (Guess v. Lubbock, 5 Texas, 535; Carter v. Marks, 17 Texas, 539.) The learned judge who wrote the opinion of the Court of Civil Appeals as well as the counsel for interveners reason upon this basis, that Maria, having been a slave, could not have been emancipated in Texas under the Constitution and laws of the State and have remained in the State. Assuming that the statement of Hamilton that Maria was a free woman at the time he made the deed to her is not conclusive upon them, the law requires of the intervenors, who stand in the same attitude to the case that Hamilton himself would, if living, to prove that the emancipation did not occur at a time nor in a manner by which

it might have been lawfully done. (Guess v. Lubbock, 5 Texas, 535; Carter v. Marks, 17 Texas, 539.) The evidence shows that Hamilton resided in Texas before the revolution, or at least that he was a citizen of Texas at the time of the massacre at Goliad and continued to be a citizen of this State up to the time of his death. He might have emancipated his slave at any time before the 17th day of March, 1836, and other facts recited in the deed would tend to show that she had been a free woman for many years prior to the date of the deed, for one of the considerations expressed in that instrument is the sum of $5,000 borrowed from her, at the time that she had been free necessarily, because she could not have owned the money unless she were free; at any rate, there is no fact or circumstance which would tend to show that she had not been emancipated by Hamilton at a time when he could lawfully have done so. The interveners have wholly failed to point out any fact other than the recitals in the deed which would show anything connected with the status of Maria Hamilton except the fact that she lived with Isaac D. Hamilton up to the time of his death, and the Court of Civil Appeals finds that she was living with him as his concubine, which was not inconsistent with her freedom. The interveners having failed to show that the recital of her being free in the deed was not true, failed to overthrow the deed as a conveyance to the woman, Maria Hamilton.

Warren Brown was the first settler upon each of two different tracts of land of 160 acres each, parts of the Isaac D. Hamilton survey. The tract known in this litigation as the Mills tract was not involved in this suit, but the Nona Mills Company claimed that the occupants of that tract were its tenants, and introduced evidence of the occupancy of that 160 acres to sustain its plea of limitation whereby it claimed title to the whole survey. The discussion of the question of limitation by the Court of Civil Appeals and the facts stated by it relate to the Mills tract. We make this statement to avoid confusion in the discussion of the issue presented upon the contest over the other 160 acres, which was first settled by Warren Brown and known as the Wright tract. Wright, Chester and Roberts claimed this 160 acres jointly and made the defense against the plaintiffs and the interveners that they had acquired the title by the statute of ten years limitation. The trial court instructed the jury to find against Wright, Chester and Roberts except for eleven acres which had been enclosed within a fence. The substance of the evidence upon this subject we state as follows: Warren Brown about the year 1890 went upon the Isaac D. Hamilton survey and established a camp at the point where Wright's residence and improvements are now situated. Brown went there for the purpose of hunting game and intended to make that his home and to claim 160 acres of the land for himself under the ten years statute of limitation. He built a camp, but made no other improvements, and remained upon the place about one year, when he let his brother, who was living with him, have his claim and Warren Brown moved away settling upon the land known as the Mills tract. The brother of Warren Brown, after staying there one year, got into some trouble

and had to leave the country, leaving one Devore in possession, who failed to pay for the claim and turned the possession over to Warren Brown in 1894 and the latter moved upon it again, at which time there was a box house and a smoke house upon the land with about three acres under fence, but it does not appear by whom nor when the improvements were placed on the land. Warren Brown, who returned and took possession of the improvements and the claim, at an uncertain date sold his claim, right and title, by a writing, to Henry Peterson, who took possession of the land when Brown moved out. Henry Peterson had a brother who was with him upon the place and it is not very definite whether the conveyance of Brown was to Henry Peterson or to his brother, but they were living together and acting together and Henry Peterson testifies that the property was his own. In 1896, Henry Peterson conveyed his claim to the 160 acres to L. P. Wright, the defendant, who went immediately into possession and has remained in the possession ever since. At some time which is not made certain, Wright transferred an undivided interest of 55 acres to Chester and Roberts, but Wright continued in the possession, holding the land for himself and his joint owners, until this suit was begun, which was on the 22d day of April, 1903.

Wright, Chester and Roberts insist that the trial judge erred in directing the jury to find for the Nona Mills Company all of the land claimed by them except eleven acres, because the evidence raised the issue of ten years limitation which should have been submitted to the jury. If there be any evidence from which a jury could find in the defendants' favor upon the issue of limitation the judgment as to them must be reversed and the cause remanded. While it is true that the jury are the judges of the facts and of the weight of the evidence, they can not find a fact without some evidence, nor accord weight to that which has no probative value. It was essential to the finding in favor of the plaintiffs in error under their claim of limitation that there should be some evidence which would justify the conclusion that Wright, Chester and Roberts, and those under whom they claimed, had held the adverse, peaceable possession of the land continuously for a period of ten years prior to the institution of the suit. To constitute adverse possession the party occupying the land must in some way appropriate the land for some purpose to which it is adapted. Mere occupancy of land without any evidence of an intention to appropriate it will not support the statute of limitation. (Sellman v. Hardin, 58 Texas, 86.)

The possession of the land from the time Warren Brown first entered upon it in 1890 or 1891 was continuous, passing from him consecutively to his brother, who delivered it to Devore, who returned it to Warren Brown in 1894. Warren Brown made no improvements upon the land during his first occupancy except to build a camp. He went upon the land for the purpose of hunting "varments," as he states. He evinced no purpose to use the land in any way whatever and did not use it except in the mere act of pitching his camp thereon. The possession to be adverse must be of that character which would notify the owner of the intention of the occupant of

the land to appropriate it to his own use. It surely can not be contended that the camping upon a tract of wild land would constitute. such adverse possession as would notify the owner that his land was being claimed by another. There is not as much evidence of an intention to appropriate the land by Brown as there was in the case cited above, in which the claimant maintained hog pens upon the land and had used it for the purpose of feeding his hogs thereon for many years, during which time he had cut and carried away fire wood from it and protected the land from trespass by other people, at the same time using it as a ranch for his cattle and horses. In that case (Sellman v. Hardin, cited above), the court said: "The court did not err in holding that the evidence offered by the appellant was not sufficient to show such adverse possession as would sustain his plea of limitation." There is no evidence of the construction upon this land of anything more permanent than the camp pitched by Warren Brown, nor of any use of the land until the year 1894 when Brown says that he returned to the land, found upon it a house, a room 18 by 20 feet, and a smoke house, but he does not state when these houses were constructed upon the land nor by whom. Upon this testimony the jury could not find that the houses had been built upon the land and occupied at a time ten years prior to April 22, 1903; therefore there is no evidence of such adverse possession of the land by Brown and those who succeeded him, prior to his second occupancy, as would justify a verdict in favor of the defen'ants on the ten years statute, and the court correctly instructed the jury to find against them upon that issue. It is true that the court, at the request of plaintiff, directed the jury to find for defendants eleven acres of the land "embraced within the enclosure of and including the improvements of said L. P. Wright" to which they were not entitled under the evidence. The fact that the plaintiffs conceded to Wright, Chester and Roberts eleven acres to which the evidence did not entitle them does not justify this court in holding that the jury might have found that they were entitled to 160 acres.

The Court of Civil Appeals erred in reversing the judgment of the District Court, and it is therefore ordered that the judgment of the Court of Civil Appeals be reversed and the judgment of the District Court be affirmed.

*Reversed and judgment of District Court affirmed.*