HARVEY et al. v. PETERS et al.

No. 15105.

Court of Civil Appeals of Texas.
Fort Worth.

Feb. 17, 1950.

Rehearing Denied March 17, 1950.

868

for title and possession of a described tract of land in Fort Worth. Trial to the court without a jury culminated in a judgment for plaintiff from which defendants appeal.

The land in question, a city lot with a house on it, was conveyed by deed to Charles Bess and his daughters Maggie Davis and Beatrice Bess in the year 1904. Bess and his daughters moved on the land in 1904. Bess lived there until he died in 1928. The daughter Maggie Davis lived there until she died in 1947. Beatrice lived there until she married about 1913. Appellant Gladys Harvey is a daughter of Maggie Davis. She has lived on the land since 1924. After the present suit was filed Gladys received quitclaim deeds from the other heirs of Charles Bess.

On February 3, 1913, judgment was rendered in a suit for taxes on said land theretofore brought by the State of Texas, and on April 1, 1913, the sheriff sold the land and executed a deed to G. E. Dance, who later conveyed the land to R. F. Peden and Morris Rector.

In 1924, the City of Fort Worth sued for taxes on said land, naming Peden and Rector, but none of the Bess family as defendants. Judgment was had after personal service on Peden and Rector, and the sheriff sold the property on March 3, 1925, to the City of Fort Worth. This sheriff's deed was not recorded until April 21, 1943.

Appellants first attack the tax judgment and the sale thereunder made in 1913. They say that the judgment was void as to Charles Bess because he was cited only by publication, and that it was ineffective for any purpose as to his two daughters because they were not parties to the suit and because no judgment was rendered against them.

 It was satisfactorily proved, somewhat in the manner upheld in Ruby v. Von Volkenberg, 72 Tex. 459, 10 S.W. 514, that all the records in the 1913 tax case were lost except the sheriff's deed and the minutes showing the judgment. The judgment recited that Charles Bess had been duly served by publication. This rendered the judgment good as against the

T. Young Collins, Monroe Poulter, and Frank R. Graves, all of Fort Worth, for appellants.

Ernest May, of Fort Worth, for appellees.

McDONALD, Chief Justice.

Appellee Mrs. Peters, joined by her husband, sued Gladys Harvey and her husband

collateral attack made in the present suit. State Mortgage Corp. v. Traylor, 120 Tex. 148, 36 S.W.2d 440. Many other cases could be cited in support of this proposition, but we cite the case just mentioned because appellants especially rely on it. Even though it was proved in the present suit that Charles Bess was in possession of the property by a recorded deed, it must be presumed in the present suit, a collateral attack on the tax judgment, that facts existed, and that the court found that such facts existed, which warranted service by publication.

 The only defendant referred to by name in the 1913 tax judgment was Charles Bess. Appellants say that the judgment shows on its face that neither of the daughters were parties to the tax suit and that no judgment was rendered against them. The sheriff's deed affirmatively recites that the judgment in the tax suit was rendered against Chas. Bess, Maggie Davis and Beatrice Bess, "and the unknown owners." The phrase "unknown owner" also appears in the judgment. The papers in the case having been lost, the sheriff's deed, especially in view of the fact that it was entitled to consideration as an ancient instrument because it was more than thirty years old, was admissible in evidence without proof of the judgment and without proof of the order of sale. Giddings v. Lea, 84 Tex. 605, 19 S.W. 682. The judgment being in evidence in this case, the sheriff's deed could not be accepted as proof of a judgment differing in terms from that shown by the evidence, but the sheriff's deed may be looked to in aid of the judgment. It has often been held, where the judgment fails to name the parties, or fails to name all of them, or fails to describe the land involved, that other portions of the record may be looked to to supply such deficiencies. In applying such rule, the courts have construed a judgment as being in favor of or against plural parties, although the judgment referred to the parties in singular terms. Where the parties are not named, the presumption is that the court rendered judgment in favor of those who were the plaintiffs, and against those who were defendants, or such of them as

had been brought before the court by due service of citation. In Kenley v. Robb, Tex.Com.App., 245 S.W. 68, it was held, where the records had been burned and the sheriff's deed was more than thirty years old, that its recitals were sufficient to establish the judgment, executions and returns recited therein. We do not need the recitals in the sheriff's deed in the present case to establish the fact that there was a judgment, but we are entitled to look to them to determine whether or not the two daughters were parties to the tax suit and whether or not the judgment was against them, where the judgment is not clear as to who were the parties defendant. It is said in Dunlap v. Southerlin, 63 Tex. 38, that "Every judgment, when ambiguous as to the party or parties in favor of or against whom it is rendered, must be read in the light of the entire record in the case, which, in the sense here used, embraces the pleadings." In Houston Oil Co. of Texas v. Village Mills Co., Tex. Com.App., 241 S.W. 122, 129, it is said, "Where a judgment is ambiguous and possibly conflicting in its provisions, resort can be had to the pleadings and the entire record in order to ascertain the real intent and force of the judgment." In Smith v. Switzer, Tex.Civ.App., 270 S. W. 879, the judgment did not show the names of the parties. The court looked to the abstract of judgment issued by the clerk, among other records, to determine who were the parties to the suit. The judgment in the tax suit was ambiguous as to parties. In some places the singular term defendant was used, in other places the plural term defendants was employed. We hold, under the circumstances presented, that the two daughters were parties to the tax suit and that judgment was rendered against them in it.

 It is not shown that the two daughters were served with citation, nor does the judgment recite service on them. But the burden was on appellants to show that the daughters were not served in the collateral attack made in this suit on the tax judgment. The Supreme Court has definitely held that decrees of the district court entered in suits to foreclose tax

liens are supported by all the presumptions which uphold judgments of domestic courts of general jurisdiction. State Mortgage Corp. v. Ludwig, 121 Tex. 268, 48 S.W.2d 950. "When a judgment of a domestic court of general jurisdiction is collaterally assailed upon the theory that no proper notice was given, * * * it now appears to be the accepted rule that when the record is silent on the issue of notice, proper notice will be conclusively presumed." 25 Tex.Jur. 889. The presumption is applicable both as to personal service (Id. 891) and as to constructive service (Id. 893). The general rule is that "when the record of a collaterally attacked judgment of a court of general powers is silent as to one or more of the facts essential to the attachment of jurisdiction, or when the record is missing or unavailable, it will be conclusively presumed that all jurisdictional requisites were complied with before judgment was rendered." Id. 878–879. "The presumption is that the court which rendered the judgment did its duty." Id. 831–832. Under the record now before us, the 1913 tax foreclosure sale must be upheld.

Appellants do not contend that there was any irregularity with respect to the tax suit brought by the City of Fort Worth in 1924 other than that neither Charles Bess nor the daughters were made parties to it nor were they bound by the judgment rendered in it.

Appellants claim title under the ten year statute of limitation. Art. 5510, Revised Civil Statutes. It is undisputed that various members of the Bess family have continuously occupied the premises as their home since Bess and his two daughters moved into the place in 1904. The trial court found, in his findings of fact and conclusions of law, that the possession of such occupants after April 1, 1913 (the date of the sheriff's sale above described), was not hostile to nor inconsistent with the record title, and that neither Charles Bess, Maggie Davis nor the defendants ever got title by limitation.

Appellee Mrs. Peters, her husband acting for her in the matter, purchased the property from the City of Fort Worth in 1949 for a cash consideration of $800. Mr. Peters testified and the court found as a fact that in 1947 he was contemplating the purchase of the land from the City, and asked Gladys Harvey if she were the owner and she said that she was not, that she paid rent to one Trezevant.

It is undisputed that some or all of the original owners, to-wit, Charles Bess and his daughters, or the appellants, have continuously occupied this property as their home since 1904. Their actual possession was not disturbed after the sheriff's sale in 1913, nor was it disturbed after the sheriff's sale in 1925. There is not a hint in the evidence that any person other than the members of the Bess family ever occupied the premises at any time after 1904, nor is there even a suggestion in the evidence that any of them ever paid any rent to or in any other way acknowledged any title in Dance, Peden, Rector or the City of Fort Worth. Peters quoted Gladys Harvey as having said that she paid rent to one Trezevant. Beatrice Bess married a man named Trezevant, and the reasonable inference is that Gladys Harvey was paying rent to her aunt, who was a part owner of the property. Under the evidence in the record, the only reasonable inference is that whatever members of the Bess family were in possession from time to time were holding for the benefit of themselves and their cotenants, and it is settled that the possession of any of them under such circumstances inured to the benefit of such of the cotenants as were not at the moment in possession. Myers v. Frey, 102 Tex. 527, 119 S.W. 1142.

Appellees argue, and the trial court apparently thought, that the evidence failed to show that the members of the Bess family held possession under any claim of right after the tax foreclosure sales. Appellees suggest that the situation is analogous to that where a person in possession executes a conveyance of property, after which, if he remains in possession, it will not be presumed that his possession was hostile to the title of the true owner until he does something to put the true owner on notice that his possession is hostile, or adverse. They say that the evidence shows nothing

more than continued possession, and fails entirely to show that such possession was hostile to the record title of Dance, Peden and Rector, or the City. They say that for all the evidence shows, rent may have been paid to the record owners. Citing 2 Tex.Jur. 322, they say that inferences will not be indulged in favor of the limitation claimant.

It is true, to quote from an opinion of our Supreme Court, that "mere occupancy of land without any evidence of an intention to appropriate it will not support the statute of limitation." Nona Mills Co. v. Wright, 101 Tex. 14, 23, 102 S.W. 1118, 1121. "To constitute hostility, the claimant's acts must have been such as to notify the owner that his title was disputed." 2 Tex. Jur. 119. The test is said to be whether the use made of the land, and the acts done by the claimant on the land, "were of such nature and character as to reasonably notify the true owner of the land that a hostile claim was being asserted to the land." Id. 119-120. "Possession and use of the land in accordance with the statutory requirements are sufficient to give rise to an inference or presumption that the claimant's possession was hostile or under a claim of right." Id. 123-124. "It is true, as held by the Court of Civil Appeals, that from actual possession of land evidenced by fences enclosing it a presumption arises that it is adversely claimed by the person in possession." McKee v Stewart, 139 Tex. 260, 162 S.W.2d 948, 952. "Ordinarily, when a person in possession of land is shown to have used and enjoyed it as owners of lands usually do, the natural inference is that his possession was taken and held for himself as owner, and that it was 'therefore inconsistent with and hostile to the claim of another.' This inference prevails unless something else is shown to qualify and explain the possession." Hartman v. Huntington, 11 Tex.Civ.App. 130, 32 S.W. 562, 563, writ refused. The last sentence of the excerpt just quoted is quoted in the opinion in McKee v. Stewart, supra.

The period of occupancy which is material to the claim of limitation is that beginning at or after the tax foreclosure sale in 1913. If the possession of

Bess and his daughters was adverse prior to the time of the foreclosure sale in 1925 in the suit brought by the City, the suit by the City did not interrupt their possession because they were not a party to it. 2 Tex. Jur. 163-164. If the adverse possession began as of the time of the foreclosure sale in 1913, title by limitation was perfected in Charles Bess and his daughters before judgment was rendered in the tax suit brought by the City, and upon elemental grounds the limitation owners were not bound nor was their limitation title affected by the tax suit to which they were not parties. If any period of occupancy following the foreclosure sale in the second tax suit be needed to make out the ten year period of adverse possession, it is settled that limitation may run against a city in a situation like the one before us. Hatcher v. State, 125 Tex. 84, 81 S.W.2d 499, 98 A.L. R. 1213.

Appellees say the case is similar to the one where the grantor remains in possession after he has conveyed the property to another, as in Kidd v. Young, 144 Tex. 322, 190 S.W.2d 65. It is our opinion that it more nearly resembles Pendleton v. Mc-Mains, 32 Tex.Civ.App. 575, 75 S.W. 349, 350. There a judgment was obtained against the occupants in 1888, but they remained in possession. More than ten years later another suit was brought against them for title and possession of the land, in defense to which they set up a claim of limitation. The court said: "The judgment obtained * * * in 1888 divested them of all title owned by them in the land in controversy at that time, but did not prevent them from obtaining title to it again by adverse possession after that time. More than 13 years had elapsed after the rendition of the judgment before this suit was instituted, and during all those years defendants in error had been in possession of the land, and claiming title to it against the world. There is no peculiar sacredness in a title to land obtained through a judgment that lifts it out of the scope and purview of statutes of limitation, and, if the possession be adverse for 10 years, whether it be by the defendant in the judgment or any one else, it will perfect a title."

A portion of the excerpt just cited was quoted with apparent approval by the Supreme Court in Thomson v. Weisman, 98 Tex. 170, 82 S.W. 503, and the case is cited with approval in a case as late as Power v. Jones, Tex.Civ.App., 135 S.W.2d 1054, writ dis. c. j.

■ The trial court found as a fact that there had been no adverse possession since 1913. We are aware that "The question of adverse possession is so essentially a question of fact that only in rare cases would a court be justified in holding that, as a matter of law, it had been established", City of Abilene v. Reed, Tex.Civ.App., 294 S.W. 913, 914, and that is what we do in a sense if we overturn the fact finding of the trial court. However, the facts in the case were not in dispute to any material degree, so what we have is more nearly a problem of applying the law to undisputed facts, and giving effect to inferences of fact which the law creates under certain circumstances. It is our holding that the trial court was in error in denying the claim of limitation under the evidence contained in the record.

■ The trial court also held that Gladys Harvey was estopped to claim title to the property, on the ground that she told appellant Cliff Peters in 1947 that she did not own the property. We do not believe that the evidence justified this holding. In 1947 Gladys Harvey owned only an undivided interest in the property. Speaking precisely, she did not own the property. If she was paying rent to one Trezevant, such fact would not have been inconsistent with a claim of ownership on her part of an interest in the property, the evidence showing without dispute that at that time her aunt, whose married surname was Trezevant, was also a part owner of the property. When all of Mr. Peters' testimony is considered, it is almost impossible to believe that he purchased the property from the City in 1949 because of the statement of Gladys Harvey, made two years before, that she did not own the property. Mr. Peters' own testimony is strongly persuasive of the fact that he relied on the statements of the land agent of the City as to the City's ownership of the property.

■ Gladys Harvey and those through whom she deraigns title have been in exclusive, continuous, uninterrupted possession of this property for more than thirty-five years. There is not a scintilla of evidence that they have paid rent to any one or that they have in any way whatever acknowledged title to be in Dance, Peden and Rector, or the City of Fort Worth. We have not been cited to a case, nor have we found one, where the claim of limitation was denied under such circumstances.

Appellees' pleadings contained some rather vague allegations with reference to a right of subrogation to the tax liens on the property. Appellants say that appellees were not entitled to subrogation under the facts. This phase of the case has been developed so insufficiently that we do not feel justified in attempting to declare what the rights of the parties might be as to the claim of subrogation.

The judgment of the trial court is reversed and the cause is remanded for another trial.