because it was permitting the state to impeach its own witness.

The record shows that said witness had knowledge of facts surrounding the alleged offense. It was shown that the witness was unwilling to disclose pertinent facts contained in her former written statement, thereupon the state pleaded surprise and the jury was instructed that the same was permitted only for the purpose of impeachment. Under these facts, no error is shown.

We remain convinced that the appeal was properly disposed of on original submission.

Appellant's motion for rehearing is overruled.

Opinion approved by the Court.

**W. T. CARTER & BROTHER, Appellant,**

v.

**G. B. RUTH, Appellee.**

No. 5016.

Court of Civil Appeals of Texas.

Beaumont.

Jan. 27, 1955.

K. W. Denman, Lufkin, for appellant.

Charles K. Ruth, Lufkin, for appellee.

ANDERSON, Justice.

The action, which is in form of trespass to try title, was instituted by the appellant, W. T. Carter & Brother, a partnership. The plaintiff's petition, as it appears in the transcript, would place in issue the title and right of possession to 589 acres of land in Angelina County, Texas, the same apparently being all of Survey 9, Block 3, Texas & New Orleans Railroad Company Surveys made under Land Script No. 498, issued June 23, 1860. However, the parties and the trial court appear to have considered the petition amended in this respect and the land in controversy restricted by a stipulation that was reduced to writing, signed by the attorneys for both parties, filed among the papers of the cause on the day the case went to trial (March 16, 1954), and introduced in evidence by the plaintiff without objection, which stipulation was as follows:

"In The District Court of Angelina County
"State of Texas

"W. T. Carter & Brother
VS.                              No. 8435
G. B. Ruth

"To Said Honorable Court:

"For the purpose of facilitating the trial of the above entitled and numbered cause and avoiding unnecessary proof, of simplifying the issues involved, of admitting and agreeing to facts and documents which are true and undisputed, the parties hereto admit and agree as follows:

"(1) That the strip or tract of land described in the supplemental answer filed

herein by the defendant, G. B. Ruth, on March 12, 1954, is the same and identical strip or tract of land involved in cause No. 3998, styled Carter-Kelley Lumber Company v. G. B. Ruth, in the District Court of Angelina County, Texas, wherein judgment was rendered on May 9, 1925, and the issues involved in the instant cause are the same issues as involved in said cause No. 3998. The strip or tract of land involved in said two suits or causes of action is described as follows:

"Beginning on the South boundary of the John Leonard Preemption Survey where the now present Shawnee crosses said boundary line;

"Thence West 220 varas, more or less, to the original S.W. corner of the John Leonard Survey from which a hickory, (original 7 inches in diameter when the survey first made) bears N. 75 W, this corner is about 5 varas South of where the old bank of Shawnee Creek stood before the course of said creek changed;

"Thence North 950⁴⁄₁₀ varas, a stake from which a Hickory bears North 75 West, another Hickory bears North 80 West;

"Thence East 220 varas, more or less, to the intersection of the line run and being claimed by plaintiff as the West boundary line of the John Leonard Survey;

"Thence South with said line 950⁴⁄₁₀ varas to the place of beginning. The said tract of land containing 36⁸⁄₁₀ acres of land, more or less.

"(2) That the sole issue in this cause is one of boundary, the dividing line between the John Leonard Survey and Block No. 3 T. & N. O. R. R. Co. Section 9, said dividing line being the West line of the Leonard Survey, and that such issue was involved in said Cause No. 3998 and there determined.

"(3) That the plaintiff, W. T. Carter & Brother, is the owner of a fee simple title to 589 acres, more or less, of Block No. 3, T. & N. O. R. R. Co. Section 9, and that the defendant, G. B. Ruth, is the owner of

fee simple title to the John Leonard Survey, and the West line of the John Leonard Survey is one of the East lines of Block No. 3, T. & N. O. R. R. Co. Section No. 9.'

"(4) That the parties to the instant suit are the same as the parties in Cause No. 3998, the land involved is the same, and the issues involved are identical, the plaintiff herein, W. T. Carter & Brother being a successor in title to Carter-Kelley Lumber Company to the land involved herein, and the defendant, G. B. Ruth, is the same defendant as in said Cause No. 3998.

"(5) That the Judgment in said Cause No. 3998, styled Carter-Kelley Lumber Company v. G. B. Ruth, in the District Court of Angelina County, Texas, as rendered on May 9, 1925, was appealed to the Court of Civil Appeals of the Ninth Supreme Judicial District at Beaumont by the defendant, G. B. Ruth, and said judgment was affirmed by said Court of Civil Appeals and the opinion of said Court of Civil Appeals is reported in Volume 286 on page 322 of the South Western Reporter; and that said conclusions, findings, judgment, and opinion of said Court of Civil Appeals became upon its rendition, and is now, final.

"Witness our hands this the 15th day of March, 1954.

"/s/ Charles K. Ruth

"Attorney for Defendant.

K. W. Denman

Attorney for Plaintiff."

The suit between the parties in 1925 referred to in the foregoing stipulation was a boundary suit in which the west boundary of the John Leonard Survey, which is also one of the east boundaries of Survey 9, Block 3, T. & N. O. R. R Co. Surveys, was adjudged to be located on the ground some 220 varas east of where G. B. Ruth, the defendant in both that and the present suit, contended it should be. The judgment of the trial court was affirmed in Ruth v. Carter-Kelley Lumber Co., Tex.Civ.App., 286 S.W. 322, to which reference is made for more particulars.

■ The judgment in the former suit was pleaded by the plaintiff in the case at

bar as being res judicata of all matters in controversy between the parties, and it would appear clearly to be so if the stipulation is given effect and enforced according to its plain terms, because the judgment is unquestionably res judicata of the boundary issue, and the stipulation eliminates all other issues from the case. Not only did the parties expressly agree that the *sole* issue to be determined was that of the true location on the ground of the west boundary of the John Leonard Survey, and that this issue had been determined in the former suit, but they necessarily eliminated other possible issues by agreeing that as of the time of trial the plaintiff owned in fee simple Survey 9, Block 3, T. & N. O. R. R. Co. Surveys, and the defendant owned in fee simple the John Leonard Survey. In addition, and as further tending to eliminate all issues except the one of boundary, the defendant formally disclaimed as to all land sued for by plaintiff save and except the land embraced within the field notes contained in the stipulation. On their face, those field notes describe a part of the John Leonard Survey, and the plaintiff sued for no part of that survey. In reality, therefore, absent a boundary dispute, the defendant disclaimed as to all land sued for by the plaintiff.

The plaintiff made proper proof of the pleadings and the judgment in the earlier case, introduced the stipulation in evidence, and in due course moved for an instructed verdict on the theory that its plea of res judicata had been conclusively established. The motion was refused. On the record before us, we think it should have been granted, because the titles asserted by the parties and the issues to be tried were matters which could be stipulated, and since the stipulation conformed to our Rules of Civil Procedure, Rule 11, T.R.C.P. and was unimpeached and unattacked, it was binding and should have been enforced. Provident Nat. Bank v. Webb, 60 Tex.Civ.App. 321, 128 S.W. 426; 39 Tex.Jur. pp. 285, 295, 296, 301, Stipulations, Secs. 6, 16, 17, 20.

Having overruled the plaintiff's motion for an instructed verdict, the trial court submitted the case to the jury on one special issue under the defendant's plea of the ten-year statute of limitation, Article 5510, Vernon's Texas Civil Statutes. This issue having been answered by the jury favorably to the defendant, judgment was rendered that the plaintiff take nothing as regards the land described by the field notes as above set out in the stipulation.

In order for the issue of title by limitation to be at all involved, it is necessary that we pose for ourselves a quite different lawsuit from the one agreed to by the parties in their stipulation. For example, in order for there to be any land in litigation, we must disregard or amend the field notes in the stipulation and in the defendant's disclaimer, give precedence to the agreement of the parties that the land in controversy is the same land that was involved in the former suit, and hence a part of Survey 9 rather than of the John Leonard Survey, and we must then construe the agreement that plaintiff owns in fee simple all of Survey 9 as meaning no more than that it owns record title thereto and is entitled to recover unless such right in respect to the land involved in the former suit has been lost to it by virtue of the ten-year statute of limitation. Certainly, no such strained construction of the record should be necessary, and perhaps none such should be indulged. However, since the issue of title by limitation was submitted to the jury, we have considered this phase of the case and have concluded there was no evidence raising the issue.

Construed most favorably to appellee, the evidence on which he relies to show adverse possession and title under the ten-year statute of limitation is to the following effect: Appellee refused in his own mind to acknowledge the binding effect of the judgment rendered in the former suit in 1925 and continued to claim the land thereby affected as a part of the John Leonard Survey. That he did so claim it, was generally known in the community. He continued to go upon the land, looked after it, used it as he did his own, camped on it at times, and many times fished in a creek that crossed some part of it. He never lived on it, never cultivated any part of it, never fenced it,

and never made any valuable improvements on it, but did erect one or more hog pens on it, and at some undisclosed time after the judgment of 1925 a surveyor in his employ hacked the lines around it. Due to the fact that it was subject to be overflowed by creeks and sloughs, the land was unsuited for cultivation, but it was well adapted to the growing of timber, and it was for this latter purpose primarily that appellee used it. He did, however, upon occasion, use it as a place to assemble and feed his hogs; and his cattle and hogs, in common with those of other residents of the area, ranged on it, the land being part of a large, unfenced, open-range area. Appellee cultivated the growth of the timber by the removal of some underbrush from the land and by selective cutting of the larger trees. On his authority and as a result of sales made by him, designated trees were cut and removed from the land from time to time. On one occasion an undisclosed number of trees capable of being sawed into lumber were cut and removed, pole timber was cut one or more times, and tie timber was cut about every two years. No one ever interfered with these operations or undertook to stop them. Someone did upon one occasion attach to some ties a notice that they belonged to W. T. Carter, but at appellee's direction the ties were hauled away and marketed by his vendee, and no claim for their value was ever made by anyone. W. T. Carter & Brother cut no timber on the land between 1925 and 1950, and upon one occasion a contractor who was cutting timber for them on Survey 9 told his cutters not to go upon the land in controversy.

The evidence does not suggest that there was anything approximating a continuous cutting of either the usable timber or the underbrush on the land, and it rebuts the idea that there was ever a general, area-wide cutting of the timber. The most frequent cutting suggested was the cutting of tie timber once in each two years. Only selected trees appear to have been cut for any purpose, and neither the number of these cut at any one time, the aggregate cut through the years, their location on the ground, nor the amount of time consumed in cutting and removing them was shown.

So far as the evidence discloses, there may never have been more than two or three trees cut during any one cutting, and these may have been widely dispersed over the land and may have been cut and removed within a day or a very few days. Likewise, neither the quantity of underbrush cut, its location on the land, the time or times at which it was cut, nor the amount of time consumed in cutting it was shown; the cutting upon one occasion, within a few minutes, of a few bushes along the edge of the survey would satisfy the evidence in this respect. There was no showing as to the size of any hog pen erected, its location on the ground, the material from which it was constructed, the time when it was constructed, or the period of time it remained on the land, and no showing that any pen erected was ever actually used. Neither was there any evidence showing the frequency with which appellee assembled and fed his hogs on the land, or even that the land was used for these purposes during more than one year. Furthermore, there was no suggestion in the evidence that appellee's cows and hogs were restricted to the land by herders, no showing as to how many of them ranged on it or for what period or periods of time, and no showing that appellee even owned either cattle or hogs during each of any ten consecutive years.

The mere fact that appellee claimed the land for the required period of time was not of itself sufficient to perfect title in him under the ten-year statute of limitation, Art. 5510. Hardy v. Bumpstead, Tex.Com.App., 41 S.W.2d 226, 76 A.L.R. 1488. It is equally well settled that the occasional use of land for timber purposes, without actual residence upon or cultivation of any part of it, is not such open, notorious and visible appropriation, occupation and use of it as constitute the adverse possession, use or enjoyment contemplated by the statute. Stegall v. Huff, 54 Tex. 193, 197; Broom v. Pearson, 98 Tex. 469, 85 S.W. 790, 86 S.W. 733; Cook v. Lister, 15 Tex.Civ.App. 31, 38 S.W. 380, 2 Tex.Jur. 86, Adverse Possession, Sec. 45. Likewise, it is well settled that the requisite possession and use of unenclosed land is not

shown by proof that the claimant's livestock have grazed on it and have been attended and fed on it. De Las Fuestes v. McDonald, 85 Tex. 132, 20 S.W. 43; Sellman v. Hardin, 58 Tex. 86; Mason v. Stapper, Tex., 8 S.W. 598. The marking of the lines around it by placing hack-marks on trees did not serve to reduce the land to appellee's actual, exclusive and adverse possession. Richards v. Smith, 67 Tex. 610, 4 S.W. 571, 573; Whitehead v. Foley, 28 Tex. 268; McDonald v. Stanfield, Tex.Civ. App., 197 S.W. 892; Freedman v. Bonner, Tex.Civ.App., 40 S.W. 47, 48. Nor did appellee gain the necessary possession of the land by occasionally camping and fishing on it. Nona Mills Co. v. Wright, 101 Tex. 14, 102 S.W. 1118.

It is thus apparent that separately none of the acts done by appellee on or in connection with the land was sufficient to mature title in him under the ten-year statute. In combination, the acts were still insufficient, because they did not supplement or complement one another in such a way as to constitute continuous and exclusive possession of the land. The evidence does not even suggest that between the times when he was having the timber cut the appellee was regularly encamped on the land or that he was regularly engaged in attending and feeding livestock, or even in fishing, on it; and the fact that his unattended livestock, along with those of others, ranged on the land at will is a matter of no consequence in the circumstances. Appellee's testimony to the effect that he looked after the land and used it as he did his own were mere generalties which, unexplained, have no probative value. The only facts proved which pose any problem at all were that appellee openly claimed the land and that from time to time he cut and removed timber from it. However, as much as two years were shown to have elapsed between those cuttings, and there was no evidence to show actual possession by appellee during those intervening years. It appears to be appellee's theory that he was possessed of the land at all times because he at all times considered himself to be protecting the timber and as contributing to its general welfare by adopting methods of restrained and selective cutting. We cannot agree; what he may have had in his mind was important only as it was reflected by his overt acts. The evidence, in our opinion, shows no more than an occasional use of the land for timber purposes—widely separated and brief trespasses, as it were—and the case is controlled by the cases hereinabove cited, Stegall v. Huff; Broom v. Pearson; Cook v. Lister.

We are aware that the use which one in possession is required to make of land in order to perfect title by limitation is only such use as the land is adapted to have made of it. Nona Mills Co. v. Wright, 101 Tex. 14, 102 S.W. 1118; Moran v. Moseley, Civ.App., 164 S.W. 1093, 1094. However, there must be continuous and uninterrupted adverse possession for the full statutory period. Hardy v. Bumpstead, Tex.Com.App., 41 S.W.2d 226; Dunn v. Taylor, 102 Tex. 80, 113 S.W. 265; Pendleton v. Snyder, 5 Tex.Civ.App. 427, 24 S.W. 363, 364. And in order to be adverse, the possession must be exclusive. Richards v. Smith, 67 Tex. 610, 4 S.W. 571. The evidence in this case is insufficient as a matter of law to meet these standards and requirements of the law.

The lack of evidence to raise the issue of title by limitation was duly and in detail urged in the trial court in plaintiff's motion for an instructed verdict, and the action of the court in overruling the motion has been properly presented for review. The points complaining of such ruling are sustained. The controlling facts appear to have been fully developed upon the trial, and no remand is necessary.

Accordingly, for the reasons assigned, the judgment of the trial court is reversed, and judgment is here rendered that the appellant, W. T. Carter & Brother, recover of the appellee, G. B. Ruth, all land in controversy lying west of the west boundary of the John Leonard Survey as that boundary was fixed by the judgment in Cause No. 3998 in the District Court of Angelina County, Texas, May 9, 1925.